**CAROLINA CASUALTY INSURANCE COMPANY, a North Carolina Corporation, Plaintiff,**

**v.**

**PENNSYLVANIA THRESHERMEN & FARMERS' MUTUAL CASUALTY INSURANCE COMPANY, a Pennsylvania Corporation, Defendant.**

Civ. A. No. 61-171.

United States District Court
W. D. Pennsylvania.
April 18, 1963.

William Walker, Dickie, McCamey, Chilcote & Robinson, Pittsburgh, Pa., for plaintiff.

Gary Sharlock, Mercer & Buckley, Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

This civil action based on diversity jurisdiction came on for trial on the jury calendar. The pretrial stipulation of counsel has resolved many of the facts. The actual trial consumed less than a day, and there is now no controversy on the factual situation, but the law to be applied presents a knotty problem.

On January 28, 1957, a tractor-trailer owned by Kenneth Allison and operated by Richard Lanious collided with a bus near Altoona, Pennsylvania. As a result several persons were seriously injured. Allison is a contract carrier by motor vehicle. The Kuhn Transportation Company is likewise a contract carrier by motor vehicle. Both carriers held Pennsylvania Public Utility Commission, as well as Interstate Commerce Commission, motor vehicle carrier rights. At the time of the accident Allison's tractor-trailer unit was carrying a split load of canned goods entirely intra-state. One half of the cargo was being transported for customers of the Kuhn Transportation Company under Kuhn's manifests or bills of lading pursuant to Kuhn's Public Utility Commission rights. The other half of the cargo was being transported for customers of Allison.

At the time Allison was insured by defendant, Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company, and Kuhn Transportation Company was insured by plaintiff, Carolina Casualty Insurance Company. The policies issued to the respective carriers were identical in that each employed the following language with reference to the

coverage where "other insurance" might be involved.

"With respect to any automobile of the commercial type while leased or loaned to any person or organization, other than the named insured, engaged in the business of transporting property by automobile for others, or any hired private passenger automobile insured on the 'cost of hire' basis, or any non-owned automobile, the insurance shall be excess insurance over any other valid and collectible."

Because each insurance company claims that the other had primary coverage for the personal injury cases arising out of the collision, they entered into an agreement wherein the claims would be paid and thereafter the companies would settle their differences in a law suit between them. Plaintiff is the Carolina Casualty Insurance Company, a North Carolina Corporation, which issued its policy to Kuhn Transportation Company at Gardner, Pennsylvania. Defendant is Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company, a Pennsylvania Corporation. Its policy was issued to Allison, the owner of the tractor-trailer. The parties have stipulated as to the amount of the judgment to be entered, that is, if the plaintiff recovers the amount will be $52,227.70. If the defendant recovers the amount of its judgment is to be $52,271.60. The recovering party is to receive interest on the judgment from the date of payment of the claims.

From the trial evidence it is undisputed that Kuhn had Pennsylvania Public Utility Commission rights to haul canned goods for the Musselman Company in Biglerville to any point in Pennsylvania, and to haul canned goods for the Summers Company in New Freedom to any point in Pennsylvania West of Lewistown. Allison had Pennsylvania Public Utility Commission rights to haul canned goods from the Hungerford Company in Hungerford to any point in Pennsylvania, and to haul goods for the Summers Company to any point in Pennsylvania East of Lewistown.

A few days prior to the accident, Allison had a load of 15,995 pounds to pick up at Hungerford and deliver to consignees in Indiana, Dubois and Falls Creek. In accordance with practice between the two carriers, he inquired of Mr. Paxton at Kuhn as to whether he had any deliveries in the same general area which would enable him to take out a full load, and thus benefit both carriers by eliminating the necessity of each sending out a so-called "part-load". Kuhn did, and on telephone instructions Allison made out manifests on Kuhn's printed forms. (He kept a supply in his office for such situations.) These manifests, which Allison undertook to fulfill, called for a total load of Kuhn deliveries of 19,000 pounds, partly from Summers and partly from Musselman, consistent with Kuhn's Public Utility Commission rights. *No written lease was executed.* The two men orally agreed that Allison would get 80% of the freight revenue and Kuhn would get 20%.

The evidence shows too that, in fact, Allison employed Lanious, his own paid driver. Allison provided the vehicle and all expenses in connection with this operation. He provided the loading and unloading services, and caused to be performed every physical act necessary to pick up the loads of both carriers. And further, the sequence of the loading, the route to be taken by the driver and the itinerary of the unloading was directed by Allison. Kuhn only provided Allison with the 19,000 pounds of goods to be carried for Kuhn's customers under Kuhn's Public Utility Commission hauling rights. Kuhn, of course, directed where its load was to be picked up and directed its destination. The trial evidence did not show, and the matter is left open, as to whether Kuhn's Public Utility Commission tags were actually fastened to the vehicle at the time of the accident. Both parties agree that the method of handling the cargo, that

is for Allison to haul under Kuhn's rights and under Kuhn's bills of lading was a technical violation of the Public Utility Commission orders. But, nevertheless, it is apparently an overlooked practice in the business because it is good business in that a licensed carrier would otherwise from time to time be compelled to haul less than truckload lots at an economic loss.

During the trial of the case both offered testimony and other evidence. At the conclusion of the trial it did not appear to me that there was any factual controversy for the jury to decide. On inquiry of counsel as to whether there was a factual dispute for the jury to decide, the position of counsel for the plaintiff was that the facts were undisputed and were for the court. However, counsel for the defendant desired that the jury pass upon one issue only. In accordance with his request the jury was instructed to answer an interrogatory in a special verdict, and did answer it that at the time of the accident the driver Lanious was on the business of both Kuhn Transportation Company and Kenneth E. Allison. The defendant strongly urges that Carolina's liability springs from the fact that at the time of the accident the vehicle was proceeding from Altoona toward Route 22. This was a highway which the driver would not be traveling on if he was carrying a load solely for Allison. The driver's instructions from Allison required him to unload all of Kuhn's cargo before any of the Allison cargo was to be unloaded. This was because of the location of the consignees. The trip commenced at Biglerville early Monday morning. The sequence of the driver's stops as directed by Allison were first to go to Huntingdon, then Altoona, then Portage-Johnstown area and Ebensburg. At Ebensburg he would unload the last of the Kuhn cargo. He was then directed to proceed to unload Allison's cargo at Indiana, Dubois and Falls Creek. It was while leaving Altoona on his way to Portage that the accident occurred, and,

as indicated, on a road he would not have been on except for Kuhn's cargo.

Plaintiff contends that with the vehicle and two identical policies, the policy on the vehicle is primary and defendant should therefore pay all the damage claims amounting in this case to over $100,000.00 with costs, because the Carolina policy is excess under the factual situation and the terms of the two insurance policies. Defendant, on the other hand, contends that so far as Kuhn is concerned the Allison vehicle was leased to it for the carriage of its customer's goods under its bills of lading, and therefore, the accident happening when the driver was on Kuhn's route, Carolina has the primary coverage and should pay all the damages. In support of its position defendant asserts that Public Utility Commission regulations and the certificates filed by each company with the Public Utility Commission compel such a holding because carriers operating under Public Utility Commission rights are required to be covered by liability insurance indemnifying the public for damages incurred during their operations. Allison says here that such was the case.

■ However, it is my opinion that the rights of the respective insureds under the Public Utility Commission rules and obligations do not control the decision in the case. I have no doubt but that under the facts an injured person could have recovered from either Allison or Kuhn, assuming the negligence of the driver Lanious. This would not be only because of the general law, but because the Public Utility Commission regulations compel a carrier to assume responsibility when his operating rights are being used in the carriage of goods. But as between the two insurance companies in this case, it seems to me that the interpretation of the policies depends upon their language as applied to the factual situation irrespective of any possible technical violations of Public Utility Commission regulations.

■ This Court agrees with plaintiff that generally in the insurance business when two policies and one vehicle are involved, the policy issued to the owner of the vehicle provides primary coverage. This is the holding of the principle case by the Supreme Court of Pennsylvania, it being Pennsylvania law which controls here. Grasberger v. Liebert & Obert, Inc., 335 Pa. 491, 6 A.2d 925, 122 A.L.R. 1201, 1939. Defendant stresses as determinative its contention that the arrangements between Allison and Kuhn amounted to a leasing of the vehicle by Allison to Kuhn for Kuhn's purposes. Such a construction strains one's credulity under the factual situation. The parties themselves did not regard their transaction as a leasing arrangement. The witness, Paxton, for Kuhn testified that he was purchasing transportation and no leasing arrangement was intended. Of course, the reality of the situation undoubtedly is that if these men were pressed by the Public Utility Commission, they would attempt to argue that there was some leasing arrangement between them. But the fact is that what Allison did was to have in his possession Kuhn's blank manifests, filled them out and carried in his vehicle Kuhn's Public Utility Commission insignia. In my opinion the transaction was nothing more than Allison carrying a load of freight for a customer of Kuhn's, and both of them sharing in the revenue. Kuhn simply hired Allison to haul a cargo for two of its customers. Under this situation with identical policies, it seems to me that the only rational construction is that the policy provisions as to the owner of the vehicle places liability upon defendant, and the provisions of both policies as to the definition of the insureds in the insuring agreements includes the driver, Lanious, as well as Allison, and the excess clause in the policies applies in this instance to Kuhn because it is the non-owner of the vehicle. The owner's policy is therefore primary. This result is required not only by Grasberger v. Liebert & Obert, Inc., supra, but by a number of other decisions, all on the same point. Notably, American Surety Company of New York v. Canal Insurance Company, 258 F.2d 934 (C.C.A. 4, 1958); Employers' Liability Assurance Corporation Limited v. Fireman's Fund Insurance Group, 104 U.S.App.D.C. 350, 262 F.2d 239 (1958); Continental Casualty Company v. Curtis Publishing Company, 94 F.2d 710 (C.C.A. 3, 1938).

## ORDER

And now, this 18th day of April, 1963, based upon all the evidence and the special verdict of the jury and for the reasons stated in the foregoing opinion, the Clerk is directed to enter judgment in favor of the plaintiff, Carolina Casualty Insurance Company, a North Carolina Corporation, and against the defendant, Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company, a Pennsylvania Corporation, in the sum of Fifty-Two Thousand Two Hundred Twenty-Seven Dollars and Seventy ($52,-227.70) Cents, with interest on the amounts paid from the time they were paid as provided in the stipulation.

And further, on the counterclaim, judgment is directed to be entered against the defendant and in favor of the plaintiff.