## Jett v. Hill

*Paul Senesky*, for United National Insurance Company.

*Louis Kassen*, for Concord Mutual Insurance Company.

TAKIFF, *J.*, September 27, 1978—The instant controversy is a sequel to litigation arising out of an automobile accident which occurred August 22, 1972. Larry H. Hill, Jr. was driving an automobile

leased from Lit Brothers Rent-A-Car while his own auto was being repaired. Trial by jury had just begun on a suit brought by Rozell Jett when the parties agreed to an amicable settlement, whereby Hill would pay plaintiff $2,000.

At the time of the accident, Hill was in the unenviable position of being nominally protected from liability under two insurance policies, each of which carriers pointed to the other as responsible. Concord Mutual Insurance Company had issued a policy to Hill individually, providing coverage while he operated either an owned or non-owned vehicle. United National Insurance Company had provided insurance to Lit Brothers for its rental cars and their drivers. Standing alone, each policy afforded coverage. But together, each company sought to defer to the other as being responsible for payment, through policy restrictions known as excess clauses under the heading of Other Insurance.

By agreement of counsel for both insurance carriers, the underlying action was settled, with resolution of the conflicting positions between the carriers to be adjudicated by the court. Copies of both policies of insurance have been submitted. A memorandum of law has also been furnished on behalf of United National only.

The applicable language of the United National policy provides: "The insurance under this policy shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under another policy or otherwise."

Concord Mutual's policy sought the same "excess" status in much the same manner although in more detailed verbiage. The appropriate paragraph states:

"If the insured has other insurance against a loss covered by Part I of this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided however, the insurance with respect to a temporary substitute automobile shall be excess insurance over any other valid and collectible insurance." Thus, in the case of a rented vehicle, each policy defers to the other up to that company's limits and admits responsibility for only the unpaid excess.

While no appellate court in Pennsylvania has confronted the issue of who pays when two mutually repugnant excess clauses are involved, both common pleas and Federal courts have commented on this impasse. Continental Casualty Co. v. Aetna Casualty & Surety Co., 33 D. & C. 2d 293 (1963), involved facts and policy language substantially identical to those in the current dispute. Relying heavily on the reasoning of Cosmopolitan Mutual Insurance Co. v. Continental Casualty Co., 28 N.J. 554, 147 A. 2d 529 (1959), the court ruled that the irreconciliable excess clauses of the opposing insurance were inoperative, invoking the general coverage of each policy.

"'. . . it is obvious that there can be no "excess" insurance in the absence of "primary" insurance. Since neither policy by its terms is a policy of "primary" insurance, neither can operate as a policy of "excess" insurance. The excess insurance provisions are mutually repugnant, and as against each other are impossible of accomplishment. Each provision becomes inoperative in the same

manner that such a provision is inoperative if there is no other insurance available. Therefore, the general coverage of each policy applies and each company is obligated to share in the cost of the settlement and expenses. We think that such a conclusion affords the only rational solution of the present dispute.'" 33 D. & C. 2d at 299, citing 28 N.J. at 562.

Accord, Harleysville Mutual Casualty Co. v. United States Fidelity & Guaranty Co., 27 D. & C. 2d 544 (1961); Erie Insurance Exchange v. Pennsylvania Threshermen & Farmers' Mutual Insurance Company, 76 Dauph. 256 (1961).

This view is not unanimous, however, as a contrary conclusion was reached in Continental National Insurance Group v. Ohio Farmers Insurance Co., 39 D. & C. 2d 747 (1966). Although that case also involved two duplicative excess clauses, the court inferred from uncited policy language that the lessor's insurer intended to be primarily liable. Recognizing its divergence from the majority view on the issue of dual excess clauses, the court relied upon Grasberger v. Liebert & Obert, Inc., 335 Pa. 491, 6 A. 2d 925 (1939). Grasberger is factually distinguishable, however, since it dealt with an escape clause (whereby that policy would be null and void if other insurance existed) vis-a-vis an excess clause, rather than with two excess clauses.

The Third Circuit also resolved the issue of dueling excess clauses in Transport Indemnity Company v. Home Indemnity Company, 535 F. 2d 232 (3d Cir. 1976). There, ruled the court, should ultimate liability be established beyond the primary coverage afforded by the lessee's insurer, the additional obligation would be prorated between the two excess carriers. The same principle was

applied in INA v. Continental Casualty Company, 431 F. Supp. 316 (E.D. Pa. 1977), in which the court interpreted terms in two insurance policies as two excess clauses, requiring proration of the $125,000 judgment. The Court of Appeals reviewed INA and determined that one policy contained an escape clause rather than an excess clause. Carolina Casualty Insurance Company v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company, 216 F. Supp. 325 (W.D. Pa. 1963), held that despite two virtually identical excess clauses generally the vehicle owner's insurance was primary. That holding was based on an overbroad application of the Grasberger case. A careful reading of Grasberger discloses that the finding of primary coverage under the owner's policy was predicated upon the specific facts and the precise policy language there involved. No sweeping rule that the policy of the vehicle owner would be primary was ever intended or stated. The District Court's holding was affirmed on appeal on different grounds in the case of Carolina Cas. Ins. Co. v. Pa. Threshermen & Farmers' Mut. Cas. Ins. Co., 327 F. 2d 324 (3d Cir. 1964), where an exclusion in the policy of the nonowner of the vehicle precluded coverage, thereby yielding liability of the owner's carrier.

We conclude that the better view in Pennsylvania dictates that two incompatible excess clauses cancel each other out, thus exposing each insurer to general liability—in effect, providing double insurance. At that point the law is clear that proration of the liability between the two insurers is appropriate: Vrabel v. Scholler, 372 Pa. 578, 94 A. 2d 748 (1953).

Proration is sometimes accomplished by comput-

ing amounts in accordance with the proportionate policy limits afforded by the respective insurers. See Annotation, 69 A.L.R. 2d 1122 (1960). Precedent as well as equity, however, requires apportioning liability equally between two excess carriers. The two companies stand on equal footing and should be subjected to equal obligations. This result was clearly mandated in Vrabel v. Scholler, supra, in which the Supreme Court directed that "a judgment for one-half of the plaintiff's total recovery of $5000 plus interest and costs of the suit be entered against each . . ." 372 Pa. at 583. Equal payments were required from excess insurers in Continental Casualty Company v. Aetna, supra, Harleysville Mutual Casualty Company v. United States Fidelity, supra, and Green v. Benson, 271 F. Supp. 90 (E.D. Pa.1967).

While the District Court in INA v. Continental Casualty computed a ratio based upon policy limits, citing Transport Indemnity as authority, we do not find that case as authority for that conclusion. No mention of the method of proration is made in Transport Indemnity, but instead the Green case is cited, in which equal payments were required to be made, rather than prorationing in a literal sense.

Since the instant case was defended solely by United National, Concord is directed to reimburse to United National 50 percent of its costs and attorneys fees, including counsel fee for its sole research and memorandum of law on the present issue. United National and Concord are each directed to pay 50 percent of $2,000 plus the costs of arbitration, as heretofore mutually agreed upon in settlement of the underlying trespass action.

---

Editor's note: Exceptions dismissed, March 21, 1979.