Vrabel, Appellant, *v.* Scholler (et al., Appellant).

Argued November 20, 1952.    Before STERN, C. J.,
STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Peter P. Zion,* with him *Leonard A. Green* and *Zion, Kaliner & Green,* for Penn Mutual Indemnity Company, garnishee, appellant.

*George P. Williams, Jr.,* with him *Orr, Williams & Baxter* and *Webster S. Achey,* for plaintiff, appellant.

*George W. Alexander, Jr.,* for Colonial Mutual Casualty Company, garnishee, appellee.

OPINION BY MR. JUSTICE JONES, February 13, 1953:

When a phase of this litigation was here before (see *Vrabel v. Scholler,* 369 Pa. 235), Mr. Justice BELL, speaking for this court expressly stated that "Three important questions are involved: (1) Was the mutual mistake of fact which defendant [garnishee] alleged sufficient in law to void the insurance policy which it issued before and cancelled after the insured's accident; (2) Was it a condition precedent that the financial responsibility certificate prepared by garnishee be accepted by the Revenue Department before this insurance policy could go into effect; and (3) Was [defendant garnishee] liable (if at all) for the full amount of the insurance or only pro rata with its co-insurer?"

The above stated questions were taken up seriatim and disposed of. The first two were answered in the negative, i.e., we held (1) that the policy issued by Penn Mutual Indemnity Company (hereinafter referred to as Penn Mutual) to the defendant Scholler in intended substitution for a policy theretofore issued to him by Colonial Mutual Casualty Company (hereinafter referred to as Colonial) which was not cancelled, as contemplated, was not such a mistake of fact as would avoid Penn Mutual's contract and (2) that the acceptance by the Secretary of Revenue of Penn Mutual's

certificate of Scholler's financial responsibility was not a condition precedent to the effectiveness of Penn Mutual's policy.

We further held (3) that, in view of the fact that Colonial's policy in favor of Scholler was subsisting and outstanding at the time of the accrual of Scholler's liability to the plaintiff Vrabel, the extent of Penn Mutual's liability to indemnify Scholler was, under the "other insurance" clause of its policy, only its pro rata share of the loss. In support of that conclusion, Mr. Justice BELL stated and quoted as follows at p. 243,— "The question and the applicable law is thus aptly stated by Judge PARKER in Miller v. The Home Insurance Co., [108 Pa. Superior Ct. 278] : 'Have we here a case of double insurance that renders operative the pro rata clause? In Sloat v. Royal Insurance Co., 49 Pa. 14, READ, J., said (p. 18) : "Double insurance takes place *when the assured makes two or more insurances on the same subject, the same risk, and the same interest.* If there be double insurance, either simultaneously or by successive policies, in which priority of insurance is not provided for, *all are insurers, and liable pro rata"' "* (Emphasis, Justice BELL's). In conclusion, we said (pp. 243-244),—"Since the insured (Scholler) could recover only pro rata from the defendant indemnity company if the Colonial's policy covered 'the same subject, the same risk and the same interest', that is all that Scholler's creditor can recover. The garnishee [Penn Mutual], however, does not aver the amount of insurance or the terms of the policy issued by Colonial Mutual Casualty Company nor do such facts appear in any part of the record. It is therefore impossible for us to determine whether both policies cover 'the same subject, the same risk and the same interest', or the amount or precentage of proration. In the interest of justice the record is remanded to the

court below with direction to proceed in accordance with this opinion."

After the case was returned to the court below, the plaintiff petitioned for a declaratory judgment and brought Colonial upon the record as an additional defendant. However, the court below, instead of determining the facts material to the appropriate execution of our remand, held that Colonial's policy had been cancelled before Scholler's liability to Vrabel had accrued and that, consequently, no liability rested upon Colonial by reason of its policy indemnifying Scholler. That conclusion was plainly error.

By stipulation of counsel filed in the court below, Colonial admitted that, if its policy was in force at the time of the accident, it covered the same subject and the same risk as did Penn Mutual's policy. It also covered the same interest. Each policy carried the statutorily required limits of $5,000 for the personal injury or death of one person and $10,000 for the injury or death of two or more persons in any one accident: Uniform Automobile Liability Security Act of May 15, 1933, P. L. 553, Section 1 (i), 75 PS §1253 (i).

That Colonial's policy was in force at the time Scholler's automobile injured the plaintiff, Vrabel, is not open to the slightest question. The stipulated facts further show that Colonial issued its policy of indemnity to Scholler on August 1, 1947, and, at the same time, filed in the office of the Secretary of Revenue a certificate of Scholler's financial responsibility, required by the Uniform Automobile Liability Security Act, supra, upon the reissuance of his suspended operator's license. Colonial notified Scholler by letter of January 20, 1948, that it would cancel its policy on February 5th following. Scholler thereupon obtained his policy from Penn Mutual which contemporaneously forwarded to the Secretary of Revenue a certificate of Scholler's

financial responsibility. The Secretary returned Penn Mutual's certificate for the reason that "acceptable proof [is] now on file; covered by another company." On March 8th, Penn Mutual again attempted to file its certificate of financial responsibility for Scholler; and, again it was returned by the Secretary for the reasons that "Acceptable proof [is] now on file covered by another company" and "Company filing for the above captioned have not cancelled to date". Scholler's automobile accident which injured Vrabel occurred on March 20, 1948. It was not until May 3, 1948, that Colonial sent notice to the Secretary of Revenue of the cancellation of its policy in favor of Scholler.

Section 2 (a) of the Uniform Automobile Liability Security Act provides that "When proof of financial responsibility is required as a condition precedent to the granting of renewal of an operator's license or to the termination of the suspension thereof, the written certificate of an insurer . . . that it has issued to him, or for his benefit, a motor vehicle operator's policy or a motor vehicle liability policy which, at the date of the certificate, *is in full force and effect and will so continue until the expiration of fifteen days after notice of expiration or cancellation shall first have been given to the secretary in writing*" (Emphasis supplied). It follows, therefore, from the undisputed facts that Colonial's policy covering Scholler was in full force and effect until May 18, 1948.

No one would presume to deny that had Scholler not taken out the policy with Penn Mutual on February 5th, Colonial would be liable under its policy, in the admitted circumstances, for the damages due to Scholler's injury of Vrabel on March 20th. How, then, could the issuance of the Penn Mutual policy operate to avoid the plain wording of the statute with respect to the continued effectiveness of Colonial's policy under the

indisputable facts. The learned court below reasoned that, as the statute's requirement of insurance in the given situation was to protect innocent third persons and the public in general, the policy issued by Penn Mutual, which was in effect (*Vrabel v. Scholler,* supra), supplied the requirement of the statute. The question, however, is not one of equity but of law as to the meaning and effect of the above-quoted statutory provision. To treat the Penn Mutual policy as an escape for Colonial from its liability under its extant policy would be to gratuitiously inject collateral issues, and, hence, confusion, into a question of compliance with the statute's clear and unequivocal intendment. The policy that was in effect on the day of the accident, pursuant to the statute, was Colonial's. The Penn Mutual policy was merely additional insurance the effect of which was double insurance for which there must be proration of the liability between the two insurers.

The judgments appealed from are reversed at the costs of the additional defendant; and the record is remanded with directions that a judgment for one-half of the plaintiff's total recovery of $5500 plus interest and costs of the suit be entered against each, the garnishee and the additional defendant.