702 A.2d 1050

AMERICAN CASUALTY COMPANY
OF READING, PA., Appellee,

v.

PHICO INSURANCE COMPANY, and Commonwealth of Pennsylvania Medical Professional Liability Catastrophe Loss Fund, Joseph Pulcini, Jr., Director and Sharon DiRienzo and David Richard and Suzanne Richard, in their own right,

Appeal of PHICO INSURANCE COMPANY
and Sharon DiRienzo.

Supreme Court of Pennsylvania.

Argued Sept. 18, 1996.

Decided Nov. 5, 1997.

David E. Sandel, Jr., Philadelphia, for PHICO, DiRienzo.

K. Charles Gudenas, Peter J. Hoffman, Philadelphia, for American Cas. Co.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

*OPINION OF THE COURT*

CAPPY, Justice.

This direct appeal involves the question of allocation of liability payments between two excess liability insurers. More precisely, we must determine the appropriate common law

rule for apportioning the loss between insurers where the policies at issue contain irreconcilable and mutually repugnant "other insurance" clauses. For the reasons that follow, we determine that apportioning liability payments by equal shares is the appropriate allocation method and therefore reverse the Commonwealth Court.

This appeal arises out of a declaratory judgment action filed in the Commonwealth Court's original jurisdiction. This is the second time this particular case has been before this court, albeit on distinct issues. As will be discussed more fully *infra*, the initial appeal involved the issue of priority of obligations among three insurers for payment of a medical malpractice claim against a common insured; the current appeal involves only the apportionment of liability as between the two excess insurers.

The underlying facts are not in dispute. David and Suzanne Richard ("the Richards") filed suit against Bryn Mawr Hospital ("the Hospital") and Sharon DiRienzo ("DiRienzo"), a registered nurse employed by the Hospital. The Richards alleged that DiRienzo, while acting in the scope of her employment as a delivery room nurse at the hospital, was negligent in providing nursing care and treatment during the delivery of the Richards' child, Christopher. The Richards alleged that as a result of DiRienzo's negligence, Christopher sustained severe and permanent brain damage.

At the time of the alleged negligence, DiRienzo was covered by policies of insurance from American Casualty Company of Reading, PA ("American Casualty") and PHICO Insurance Company ("PHICO"). She was also eligible for coverage under the Medical Professional Liability Catastrophe Loss Fund ("the CAT fund"). All three coverages were applicable to medical malpractice claims such as that of the Richards.

American Casualty had issued to DiRienzo a Professional Nurse's Liability Policy (the "American Casualty policy") which carried a limit of $1,000,000.00. That policy covered both DiRienzo's professional and non-business activities.

PHICO had issued two policies of insurance to the Hospital both of which afforded coverage to DiRienzo by virtue of her status as an employee of the hospital. The first, a Health Care Provider's Comprehensive Liability Policy (the "PHICO primary policy") provided, inter alia, "Institutional Professional Liability Coverage" for professional employees, other than physicians, for liability arising out of the rendering or failure to render professional services. A clause contained therein stated that its coverage was primary. The limit of that policy was $200,000.00. The second policy issued by PHICO ("the PHICO excess policy") provided excess coverage up to $10,-000,000.00 for virtually the same liability covered under PHICO's primary policy.

Finally, the CAT fund provided a maximum of $1,000,000.00 coverage to DiRienzo by virtue of her status as an employee of the hospital.[1]

The Richards' action ultimately settled.[2] Prior to settlement, American Casualty filed a petition in the Commonwealth Court seeking a declaratory judgment regarding the priority of each of the three insurers' obligations with respect to the payment of the medical malpractice claim against their common insured, DiRienzo. The Commonwealth Court ultimately determined that the PHICO primary policy was to pay the first $200,000.00; that the American Casualty policy was a "residual primary policy" and as such, was to pay the next $1,000,000.00; that the CAT fund was obligated to pay the next $1,000,000.00; and that if the judgment in the underlying action should exceed those limits, the PHICO excess policy

1. One of the issues presented in the earlier appeal was whether DiRienzo was a "health care provider" eligible for an additional $1,000,000.00 of coverage from the CAT fund. It was ultimately determined that she was not entitled to the additional coverage. *American Casualty Co. of Reading, PA. v. PHICO Ins. Co.*, 537 Pa. 295, 643 A.2d 91 (1994).

2. According to the brief filed on behalf of PHICO and DiRienzo, the case settled for $3,537,902.31. Yet, we have found no evidence of record indicating the amount for which the case settled, the amount PHICO paid in settlement, and the amount paid on behalf of DiRienzo (whom American Casualty also insures) and on behalf of the Hospital (which American Casualty does not insure).

would then apply. *American Casualty Co. of Reading, PA. v. Phico Ins. Co.,* 145 Pa.Commw. 184, 602 A.2d 904 (1992).

On appeal, this court reversed the decision and remanded for further proceedings, holding that the American Casualty policy was an excess policy, not a primary policy, and that as such it occupied the same level of insurance coverage as the PHICO excess policy. Accordingly, this court held that the first $200,000.00 of liability was to be borne by PHICO's primary policy, that the next $1,000,000.00 be paid by the CAT fund, and that only then did the American Casualty policy and the PHICO excess policy assume liability. *American Casualty Co. of Reading, PA. v. PHICO Ins. Co.,* 537 Pa. 295, 643 A.2d 91 (1994). We specifically noted that the issue of the proper allocation between American Casualty and PHICO with respect to excess coverage was not ascertainable from the record as then presented and stated that the issue was properly left for the Commonwealth Court to address on remand. *Id.* at 303 n. 1, 643 A.2d at 95–96 n. 1.

The sole issue addressed by the Commonwealth Court on remand was the proper method of allocating the remaining liability between the American Casualty policy and the PHICO excess policy. PHICO took the position that the excess portion of the settlement should be allocated on an equal shares basis with each insurer matching dollar for dollar payments up to the limits of the lower policy, and with any remaining portion of the loss being paid from the larger policy up to its limits. This method is commonly referred to as the "equal shares method".[3]

American Casualty, on the other hand, argues that allocation should be based on a pro rata by limits basis (the "policy limits method"). This approach, which is often referred to as the "majority rule",[4] allocates the loss in excess of primary

---

3. The equal shares method is sometimes referred to as the maximum loss approach.

4. PHICO argues that the equal shares approach is the "modern trend" because the majority of the states which have considered this issue since 1975 have opted for the equal shares method. This is not an accurate statement.

coverages by prorating according to the ratio of the coverage provided by each policy for the same loss to the total coverage provided by all policies. Here, American Casualty's policy limit is $1,000,000.00, and PHICO's is $10,000,000.00. Thus, application of the policy limits method would result in PHICO being apportioned ten-elevenths of the excess loss ($10,000,000.00/$11,000,000.00), and American Casualty being apportioned one-eleventh of the excess loss ($1,000,000.00/11,000,000.00).

In its opinion, the Commonwealth Court noted that two different panels of the Superior Court had come to different conclusions on the allocation issue. *See State Farm Mutual Automobile Ins. Co. v. Universal Underwriters Ins. Co.,* 441 Pa.Super. 446, 657 A.2d 1252 (1995) (adopting the policy limits method) [5]; *Hoffmaster v. Harleysville Ins. Co.,* 441 Pa.Super.

At least seventeen of our sister states have addressed this issue since 1975. Five states have endorsed the equal shares method. *Western Casualty and Surety Co. v. Universal Underwriters Ins. Co.,* 232 Kan. 606, 657 P.2d 576 (1983); *Carriers Ins. Co. v. American Policyholders' Ins. Co.,* 404 A.2d 216 (Me.1979); *Mission Ins. Co. v. United States Fire Ins. Co.,* 401 Mass. 492, 517 N.E.2d 463 (1988); *American Nurses Association v. Passaic General Hospital,* 98 N.J. 83, 484 A.2d 670 (1984); *Mission Ins. Co. v. Allendale Mutual Ins. Co.,* 95 Wash.2d 464, 626 P.2d 505 (1981).

The other twelve states, however, have followed the policy limits approach. *Nationwide Mutual Ins. Co. v. Hall,* 643 So.2d 551 (Ala. 1994); *Columbia Mutual Ins. Co. v. State Farm Mutual Automobile Ins. Co.,* 905 P.2d 474 (Alaska 1995); *Fremont Indemnity Co. v. New England Reinsurance Co.,* 168 Ariz. 476, 815 P.2d 403 (1991); *Allstate Ins. Co. v. Executive Car and Truck Leasing, Inc.,* 494 So.2d 487 (Fla.1986); *Empire Fire and Marine Ins. Co. v. North Pacific Ins. Co.,* 127 Idaho 716, 905 P.2d 1025 (1995); *AID Ins. Co. v. United Fire Casualty Co.,* 445 N.W.2d 767 (Iowa 1989); *Allstate Ins. Co. v. Chicago Ins. Co.,* 676 So.2d 271 (Miss.1996); *Bill Atkin Volkswagen, Inc. v. McClafferty,* 213 Mont. 99, 689 P.2d 1237 (1984); *Universal Underwriters Ins. Co. v. Allstate Ins. Co.,* 134 N.H. 315, 592 A.2d 515 (1991); *CC Housing Corp. v. Ryder Truck Rental, Inc.,* 106 N.M. 577, 746 P.2d 1109 (1987); *The Buckeye Union Ins. Co. v. State Automobile Mutual Ins. Co.,* 49 Ohio St.2d 213, 361 N.E.2d 1052 (1977); *State Capital Ins. Co. v. The Mutual Assurance Society,* 218 Va. 815, 241 S.E.2d 759 (1978).

Thus, although a significant number of states follow the equal shares approach, that approach is still clearly the minority view.

**5.** We have recently reversed this decision on grounds other than the allocation issue. *State Farm Mutual Ins. Co. v. Universal Underwriters Ins. Co.,* —— Pa. ——, 701 A.2d 1330 (1997).

490, 657 A.2d 1274 (1995) (adopting the equal shares method). The Commonwealth Court, in adopting the policy limits method, echoed the Superior Court's pronouncement in *State Farm* that "[i]f ... the 'minority view' method of proration [proration by equal shares] is the better of the two, it is for the Supreme Court to say so." *American Casualty v. Phico Ins. Co.*, 661 A.2d 939, 944 (Pa.Cmwlth.Ct.1995) (citing *State Farm*, 657 A.2d at 1260). PHICO then took a direct appeal from this determination.

■ The issue which this court must decide is what method of allocation should be employed here. In examining this issue, we first turn to the language of the insurance contracts. We find that the insurance contracts are unhelpful in determining this matter since the "other insurance" clauses of each of the subject policies are irreconcilable and mutually exclusive.[6] Each insurance company declares in its policy that where other insurance covers the loss, that other insurance must pay first.[7]

■ We cannot give effect to both of these provisions at once. Obviously, the provisions are mutually repugnant be-

6. The "other insurance" clause in the PHICO policy provides:
   **Other Insurance.** The insurance afforded under this policy shall apply as excess over other collectible insurance, including any catastrophe loss fund applicable to professional liability, or other financial mechanisms, whether public or private, established for the purpose of paying awards, judgments or settlements for loss or damages against an **insured** entitled to participate in such fund.
   R.R. at 110a (emphasis in the original).
   American Casualty's other insurance clause provides:
   If you have other insurance which applies to injury or damage resulting from your professional services, the other insurance must pay first. It is the intent of this policy to apply to the amount of loss which is more than the limit of liability of the other insurance.
   R.R. at 134a.

7. The precedential effect of our decision is limited to those situations where the policies in question contain irreconcilable and mutually exclusive "other insurance" provisions. Thus, it shall not apply to those cases where, for instance, there are two or more policies at issue and the policies do not contain irreconcilable and mutually exclusive "other insurance" provisions.

cause by following the express dictates of one policy, we would be in direct conflict with the dictates of the other.[8]

Having determined that the insurance contracts do not provide guidance on this matter, we now turn to examine the law of this Commonwealth. We begin this portion of our analysis by noting that there is no statutory provision which controls this matter.

Next, we examine American Casualty's assertion that we determined this allocation issue almost fifty years ago in our decisions in *Vrabel v. Scholler,* 369 Pa. 235, 85 A.2d 858 (1952) (*"Vrabel I "*), *appeal after remand,* 372 Pa. 578, 94 A.2d 748 (1953) (*"Vrabel II "*). American Casualty contends that in the *Vrabel* decisions we held that the policy limits approach is the proper allocation method. We disagree for two reasons.

First, we do not believe that the *Vrabel* decisions provide clear precedential authority on this issue. We concede that the *Vrabel* opinions are not the models of clarity that they could have been; yet, we find that these decisions did not announce a common law rule that the allocation of losses between insurance carriers must be on a pro rata basis. The primary issue in the *Vrabel* decisions was whether only one insurance company bore the burden of paying for the loss at issue, or whether both insurance companies were to share the burden. Ultimately it was determined that both insurance

---

**8.** American Casualty argues that the provision in PHICO's *primary* policy which states that the method of allocation should be pro rata is incorporated into PHICO's *excess* policy. This argument is meritless. American Casualty itself acknowledges that the PHICO excess policy incorporates only those terms of the primary policy "which are not inconsistent with the provisions, terms, conditions and exclusions of this policy...." R.R. at 100a. As noted above, the "other insurance" clause in the PHICO excess policy states that PHICO would pay only after other applicable insurance policies had been exhausted. This clause clearly establishes that the PHICO excess policy will not share liability with another carrier. Such a clause, with its unmistakable antipathy to sharing liability with another insurer, is directly contrary to the primary policy's provision that PHICO will share liability pro rata. Thus, since the allocation by pro rata clause in the primary policy is inconsistent with the "other insurance" clause in the excess policy, the primary policy's allocation clause is not incorporated into the excess policy.

companies were liable. *Vrabel II*, 372 Pa. at 581, 94 A.2d at 749.

We acknowledge that there is some language in *Vrabel I* which suggests that where two insurance companies cover the same loss, and neither policy provides for the method of allocation, then all insurers are liable pro rata. *Id.* Yet, such a statement was dicta. In the *Vrabel* dispute, one of the policies did indeed provide that the proper allocation method was by policy limits. This court's conclusion, that the proper allocation method was by policy limits, was premised on the allocation method listed in one of the policies, and not on some pronouncement of common law. *See Vrabel II*, 372 Pa. at 580, 94 A.2d at 749. Thus, the *Vrabel* decisions do not provide precedential authority on the allocation issue.

Second, we do not believe that reliance on the statement made in dicta in the *Vrabel I* decision is warranted since this court did not analyze the merits of different allocation methods in either *Vrabel* opinion. Absent such an analysis, we find that it would be imprudent to follow unquestioningly statements made regarding allocation in these decisions. Thus, we do not find that the *Vrabel* decisions provide controlling precedent on the issue presented by the matter *sub judice*.

■ As we cannot determine this issue from the language of the policies or from the law of this Commonwealth, we must fashion a common law rule. For guidance, we turn to decisions rendered in other jurisdictions on this issue.[9]

■ The courts of other jurisdictions have diverged in their treatment of the allocation issue. Some jurisdictions follow the equal shares approach, which PHICO espouses, while others have adopted the policy limits method, which American Casualty asserts is the proper approach.

It is understandable that the courts are still split on this issue decades after it first arose since each approach has its strengths and weakness. The primary justification for the

9. In determining this common law rule, as with all questions of law, our scope of review is plenary. *See Phillips v. A–Best Products Co.*, 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995).

policy limits method is that "the burden imposed on each insurer is generally proportional to the benefit which he received, since the size of the premium is most always directly related to the size of the policy." *Lamb–Weston, Inc. v. Oregon Automobile Ins. Co.,* 219 Or. 130, 137, 346 P.2d 643, 647 (1959). Yet, the policy limits method has been criticized on this very same basis since it is commonly known that the principal expense in purchasing insurance is the cost of minimum coverage and that the cost of additional coverage does not increase proportionally with additional limits. *Carriers Ins. Co. v. American Policyholders' Ins. Co.,* 404 A.2d 216, 221 (1979) (citing *Cosmopolitan Mutual Ins. Co. v. Continental Casualty Co.,* 28 N.J. 554, 564, 147 A.2d 529, 534 (1959).)

The equal shares approach has been viewed by some jurisdictions as more equitable and reasonable than the policy limits method. As noted by our sister state of Kansas, the majority rule unfairly discriminates against a larger policy by apportioning the loss in proportion to the respective policy limits, utterly forgetting that both insurers, by their contracts, have in fact agreed to cover a loss up to the limits of the lesser policy. Until that point is reached, the majority rule amounts to no more than an unacceptable subsidy from the high-coverage to the low-coverage carrier. *Western Casualty and Surety Co. v. Universal Underwriters Ins. Co.,* 232 Kan. 606, 613, 657 P.2d 576, 581 (1983). *See also Ruan Transport Corp. v. Truck Rentals, Inc.,* 278 F.Supp. 692 (D.Colo.1968) [10]. The primary perceived weakness of the

**10.** The *Ruan* court provided a lengthy and lucid justification for endorsing the equal shares method:

Several points argue in favor of this minority method of prorating. The majority method of prorating proceeds primarily upon the premise that because the higher policy limit insurer receives more premium payments, he should pay a greater part of any loss incurred. If one accepts the contention of many courts that premium charges do not increase proportionally with the amount of coverage, much of the appeal of the majority method of prorating disappears. The principal arguments in favor of the majority method are then reduced to (1) there is some, though not a proportional, increase in premiums accompanying an increase in policy coverage; and (2) the majority method is usually a simple way of arriving at a prorating formula. Thus the majority method is based on a partial fiction (proportionali-

equal shares approach is that it disregards that the insurer undertaking the higher risk presumably demanded a higher premium than the lower insurer; thus, the insurer which provides the higher coverage was compensated, at least to some degree, for this greater risk. *See Continental Ins. Co. v. McKain*, 821 F.Supp. 1084, 1090 (E.D.Pa.1993).

We realize that the equal shares method has been aptly named the "minority approach". *See* n. 4, *supra.* Yet, we believe this "Solomon-like approach" comports with the most basic sense of justice. *See Western Casualty and Surety Co., supra.* We agree with our sister state of Kansas that to follow the majority rule would be to create an "unacceptable subsidy" from the high-coverage to the low-coverage carrier.

Furthermore, we are not convinced that the ostensible weakness of the equal shares method militates ·against its adoption. We do acknowledge the validity of the conjecture that the insurer undertaking the higher risk presumably demanded a higher premium than the lower insurer, and therefore was compensated for the greater risk. *See Continental Ins. Co., supra.* Yet, we do not see how this provides a convincing argument for rejecting the equal shares method. Even where the equal shares method is employed, the insurer with the greater limits retains the greater risk. In the matter *sub judice,* for example, if American Casualty and PHICO were each to pay $1,000,000.00 in liability, then PHICO would

ty between premium charges and maximum policy limits). There is, of course, some increase in premium charges with increased policy limits. This is so particularly when the loss in an occurrence is less than the maximum coverage of either policy. There is not, however, proportionate increase. The majority method of prorating operates inequitably in its differentiating treatment of the high-loss and low-loss insurer. In return for a greater premium the insurer providing higher coverage has undertaken to protect the insured against accidents involving high losses. Yet because of this undertaking to protect against high loss the larger insurer is in an unfavorable position vis-a-vis the other insurer even in cases of low loss, since under the majority method of prorating the insurer affording the greater maximum coverage pays the greater segment of any loss incurred, regardless of the amount of loss. This seems inequitable since both insurers have equally undertaken to insure against the low-loss accident.

*Ruan Transport Corp.,* 278 F.Supp. at 696.

be responsible for paying any amounts in excess up to its policy limits of $10,000,000.00. Thus, the equal shares method does not provide the insurer with the greater limits an avenue to escape the greater risk it contracted to undertake.

Thus, for the foregoing reasons, we adopt the equal shares approach as it is the more equitable allocation method.

Finally, we must address American Casualty's claim that this matter must be remanded for a third proceeding since the exact amount American Casualty owes cannot be determined based on the record before this court. Regrettably, American Casualty is correct. Although this case has been before this court twice and the Commonwealth Court twice, there is no evidence of record to support PHICO's contention that the underlying claim was settled for $3,537,902.31. Furthermore, there is no evidence of record concerning how much of the amount PHICO paid in settlement was on behalf of DiRienzo (whom American Casualty also insures) and how much was on behalf of the Hospital (which American Casualty does not insure). Without this information being of record, placing an exact dollar figure on the portion of the settlement for which American Casualty is liable is not possible. We therefore must reverse and remand this matter to the Commonwealth Court.[11]

NEWMAN, J., did not participate in the consideration or decision of this matter.

---

[11]. We give no opinion as to whether the Commonwealth Court continues to have ancillary jurisdiction over this matter pursuant to 42 Pa.C.S. § 761(c) or whether this matter should properly be transferred to the court of common pleas pursuant to 42 Pa.C.S. § 5103.