**NATIONWIDE INSURANCE COMPANY, Appellee,**

v.

**HORACE MANN INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 1, 2000.

Filed Aug. 22, 2000.

---

**10**

William J. Rogers, Pittsburgh, for appellant.

Rebecca N. Mann, Warrendale, for appellee.

BEFORE: DEL SOLE, EAKIN and TODD, JJ.

EAKIN, J.:

¶ 1 Horace Mann Insurance Company appeals from the order denying its motion for summary judgment and granting summary judgment in favor of Nationwide Insurance Company. We reverse.

¶ 2 On June 18, 1995, Joseph and Irene Fava were passengers in their vehicle, driven by Jack Shaw with their permission, when it collided with a vehicle operated by Maria Koller; the Favas and Shaw sustained injuries. The Fava vehicle was insured by Nationwide, with bodily injury coverage of $100,000 per person and $300,000 per occurrence. Shaw owned a vehicle insured by Mann, with coverage in like amounts. Nationwide paid $100,000 to Joseph Fava and $4,000 to Irene Fava for their bodily injury claims, and $11,478.54 to John and Maria Koller for their property damage claim. In its complaint, Nationwide alleged Mann was responsible to pay half these damages and defense costs; Mann refused, asserting its coverage was excess to that of Nationwide.

¶ 3 Both parties filed motions for summary judgment. By order of June 1, 1999, the trial court granted Nationwide's motion and denied the motion of Mann. The court found the "other insurance" provisions of the respective policies to be mutu-

ally repugnant. Expressly relying on *American Casualty Co. v. PHICO Ins. Co.*, 549 Pa. 682, 702 A.2d 1050 (1997) and *Hoffmaster v. Harleysville Ins. Co.*, 441 Pa.Super. 490, 657 A.2d 1274 (1995), *appeal denied*, 542 Pa. 670, 668 A.2d 1133 (1995), the court applied the "maximum loss" or "equal shares" method of apportionment and directed Mann to reimburse Nationwide for half the losses paid. This timely appeal followed, in which Mann raises three issues:

1. Whether the "other insurance" clauses at issue are mutually repugnant so as to require each policy to be treated as primary despite clear language in the Horace Mann policy providing that is [sic] coverage is excess over other collectible insurance under the circumstances of this case and the absence of conflicting language in the Nationwide policy.
2. Whether a policy which clearly provides excess coverage under the circumstances must nevertheless be considered "other collectible insurance" for purposes of the pro-rata provision of a policy which undisputedly provides primary coverage.
3. Whether the lower court's reliance on *Hoffmaster v. Harleysville Insurance Co.*, was misplaced in light of subsequent Supreme Court precedent requiring a determination that the "other insurance" clauses at issue must truly be irreconcilable before a finding of mutual repugnancy can be made.

Appellant's Brief, at 4.

¶ 4 Summary judgment is proper where the pleadings, depositions, affidavits and materials of record show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Weiner v. American Honda Motor Co.*, 718 A.2d 305, 307 (Pa.Super.1998); *see* Pa.R.C.P. 1035.1 –.5. We view the record in the light most favorable to the opposing party and resolve all doubts and reasonable inferences about the existence of an

issue of fact in favor of the nonmoving party. *Telega v. Security Bureau, Inc.*, 719 A.2d 372, 375 (Pa.Super.1998), *appeal denied,* 560 Pa. 687, 742 A.2d 676 (1999). We will reverse the grant of summary judgment only upon a clear abuse of discretion or error of law. *Tenaglia v. P & G, Inc.*, 737 A.2d 306, 307 (Pa.Super.1999).

¶ 5 Interpretation of an insurance policy is a question of law that a court may resolve on a motion for summary judgment, *Harstead v. Diamond State Ins. Co.*, 555 Pa. 159, 723 A.2d 179, 180 (1999), and as such is subject to our plenary review. *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 549 Pa. 518, 701 A.2d 1330, 1331 (1997). When interpreting an insurance contract, we must consider the parties' intent as manifested by the language of the instrument. *Bowers by Brown v. Estate of Feathers*, 448 Pa.Super. 263, 671 A.2d 695, 697 (1995), *appeal denied,* 550 Pa. 696, 705 A.2d 1303 (1997). Where that language is clear, we apply its terms as written. *Id.*; *Seven Springs Farm, Inc. v. Croker*, 748 A.2d 740, 744 (Pa.Super.2000).

¶ 6 The Nationwide policy states in pertinent part:

> In any loss involving the use of *your auto, we* will be liable for only *our* share of the loss if there is other collectible liability insurance. *Our* share is *our* proportion of the total insurance limits for the loss. For losses involving the use of other *motor vehicles, we* will pay the insured loss not covered by other insurance. *You* may have more than one Nationwide policy; *we* will pay only up to the highest limit of any one of them.

Nationwide Policy, at 9 (emphasis as in original).

¶ 7 The Mann policy states in pertinent part:

> If an *insured* is using a *temporary substitute car* or *non-owned car, our* liability insurance will be excess over other collectible insurance. If more than one policy applies to an accident involving *your car, we* will bear *our* proportionate share with other collectible liability insurance.

Mann Policy, at 10 (emphasis as in original). In addition, the Mann policy defines the term "non-owned car" as follows:

> *Non-owned car* means a private passenger *car* or *utility vehicle* not:
> 1. owned by;
> 2. registered in the name of; or
> 3. furnished or available for the regular or frequent use of *you* or *your relatives*. The use must be within the scope of consent of the owner or *person* in lawful possession of it.

Mann Policy, at 1 (emphasis as in original).

¶ 8 Appellant contends the trial court erred in finding the "other insurance" clauses to be mutually repugnant, and insists both provisions may be enforced without depriving either insured of the coverage for which they contracted (and paid). " 'Other insurance' exists where there are two or more insurance policies covering the same subject matter, the same interest, and against the same risk." *Harstead*, at 182. "Other insurance" clauses act to limit an insurer's liability where there is another policy applicable to the claimed loss. *Id.*, at 181. There are three general categories of "other insurance" clauses; these categories determine how liability is assigned in the case of concurrent coverage:

> The first, a "pro-rata" clause, limits the liability of an insurer to a proportion of the total loss. The second, an "escape" clause, seeks to avoid all liability. The Third, an "excess" clause ... provides that the insurance will only be excess.

*Hoffmaster*, at 1276 (quoting *Carriers Ins. Co. v. American Policyholders' Ins. Co.*, 404 A.2d 216, 218 (Me.1979)). "Other insurance" clauses are deemed mutually repugnant when they are irreconcilable and mutually exclusive; that is, following the express terms of one policy would be in direct conflict with the express dictates of

another policy. *American Casualty Co. v. PHICO Ins. Co.*, at 1053–54. Where two policies each purport to be excess over the other, such clauses are mutually repugnant; both must be disregarded and the insurers must share in the loss. *Id.*; *Hoffmaster, supra.*

¶ 9 The trial court's reliance on these last-mentioned cases is understandable. In *Hoffmaster*, Hoffmaster was in an accident while driving a vehicle owned by Vilsack. Vilsack was insured by Harleysville Mutual Insurance Company; Hoffmaster was insured by Keystone Insurance Company. Both policies contained identical "other insurance" clauses that included both *pro rata* and excess provisions. *Id.*, at 1277. The trial court determined the "other insurance" clauses were mutually repugnant and directed the insurers to share equally in defense and indemnity costs. On appeal, Keystone was found to have waived its argument that the language of both policies indicated an intent to have the owner's policy provide primary coverage and the driver's policy provide excess coverage. The trial court was therefore affirmed, as neither policy would cover the loss if literal effect was given to both excess clauses; "such a result would produce an unintended absurdity." *Id.* (quoting 7A Am.Jur.2d Automobile Insurance § 434, at 87–88).

> Both clauses attempt to occupy the same legal status. Any construction this Court renders should attempt to maintain the status quo. This goal can be achieved only by abandoning the search for the mythical "primary" insurer and insisting instead that both insurers share in the loss. Such an approach best carries out the intent of the insurers which was to reduce or limit their liability.

*Id.* (quoting *Carriers Ins. Co.*, at 220). No attempt was made to effectuate the irrec-oncilable "other insurance" clauses, because the policies are not agreements between the insurers,[1] and absent guidance from the legislature, the maximum loss approach was adopted, as it "affords more equitable treatment to insurers." *Id.*, at 1282.

¶ 10 Subsequently, in *American Casualty*, the Supreme Court considered irreconcilable and mutually repugnant "other insurance" clauses. Unlike *Hoffmaster*, it was already determined the policies were excess policies; each of the relevant clauses provided that where other insurance covers the loss, that other insurance must pay first. The Court concluded the clauses were mutually repugnant because it could not give effect to both provisions at once. *American Casualty*, at 1054. After discussion of the pros and cons of the *pro rata* and equal shares methods, the Court adopted the equal shares method, characterizing it as a " 'Solomon-like approach' [that] comports with the most basic sense of justice." *Id.*, at 1056. Notably, the Court limited the effect of its holding to policies where the "other insurance" clauses are truly irreconcilable. *Id.*, at 1054 n. 7.

¶ 11 The trial court's reliance in this case on *Hoffmaster* and *American Casualty* would be appropriate if there is a true repugnancy raised by the "other insurance" clauses; that repugnancy would result if these clauses are truly irreconcilable, such that giving literal effect to both would result in neither policy covering the loss. *See American Casualty*, at 1053–54; *Hoffmaster*, at 1277.

¶ 12 In *American Casualty* it had already been determined that the clauses in question were truly irreconcilable. In *Hoffmaster*, the trial court found the clauses were mutually repugnant, and there

---

1. Three methods of apportionment were considered: (1) policy limit (total loss is pro-rated on the basis of the coverage limits of each policy); (2) maximum loss (loss is pro-rated equally up to the limits of the lower policy); and (3) premiums paid (loss is pro-rated in proportion to the premiums paid). *Id.*, at 1278. The maximum loss approach was noted to be the minority, but emerging, rule. *Id.*

was no effective appellate review of the clauses because the challenge to that interpretation had been waived. Here, we do not find the "other insurance" clauses to be irreconcilable and mutually repugnant; accordingly, *American Casualty* and *Hoffmaster* do not control our disposition.

¶ 13 While the clauses in this case are similar to those in *Hoffmaster* (each contains a *pro rata* provision and an excess provision), there nonetheless is a telling distinction. The policies in this case refer to other "collectible" insurance, whereas the *pro rata* clauses in *Hoffmaster* refer to other "applicable" insurance; insurance may be *applicable* in that the insured is involved in the collision, but that does not make it *collectible per se*. Further, the portion of the Nationwide policy that applies to the covered vehicle is the *pro rata* provision:

> In any loss involving the use of *your auto, we* will be liable for only *our* share of the loss if there is other collectible liability insurance. *Our* share is *our* proportion of the total insurance limits for the loss.

Nationwide Policy, at 9 (emphasis as in original). The portion of the Mann policy that applies to use of a non-owned car is the excess provision:

> If an *insured* is using a . . . *non-owned car, our* liability insurance will be excess over other collectible insurance.

Mann Policy, at 10 (emphasis as in original). Unlike *Hoffmaster* where an excess clause competed against an excess clause,[2] here we have a *pro rata* clause competing against an excess clause. The two clauses,

to the extent each is applicable, can be enforced according to their literal terms. In conjunction, they determine the order in which these insurers must respond to the loss. The excess coverage of the Mann policy does not become collectible until the Nationwide coverage is exhausted: "If an insured is using . . . a non-owned car, our liability insurance will be excess over other collectible insurance." In other words, the Mann policy, while "applicable," was "collectible" only after the Nationwide policy was exhausted. Since under their respective "other insurance" clauses the two policies do not purport to provide the same type or scope of coverage, they are not irreconcilable.

¶ 14 *Speier v. Ayling*, 158 Pa.Super. 404, 45 A.2d 385 (1946) involved circumstances similar to this case. Ayling, insured by Allstate, was driving Speier's vehicle, which was insured by Thresherman. The Thresherman policy contained what was essentially a *pro rata* "other insurance" clause; the Allstate policy contained an excess "other insurance" clause. Citing *Grasberger v. Liebert & Obert, Inc.*, 335 Pa. 491, 6 A.2d 925 (1939), the *Speier* Court held the Allstate coverage was not triggered until the Thresherman coverage was exhausted. *Id.*, at 388. Essentially, *Grasberger* and *Speier* stand for the proposition that excess coverage is not considered collectible insurance for purposes of the underlying coverage. *Accord Donegal Mutual Insurance Co. v. Long*, 528 Pa. 295, 597 A.2d 1124, 1127 (1991). The later cases do not purport to overturn this proposition.[3]

2. As noted, waiver precluded appellate examination of the two excess provisions in *Hoffmaster*. In reading them now, it is not clear the clauses really compete against each other; the *excess* provision in the owner's policy only applied to "a vehicle you do not own." *See Hoffmaster*, at 1276 n. 2.

3. The requirements of the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. § 1701, *et seq.*, are consistent with the concept that primary coverage follows ownership of the vehicle. The MVFRL requires the

owner to be insured. *See* 75 Pa.C.S. § 1786. There is no comparable requirement for the *driver*; the vehicle is insured regardless of whether the driver is otherwise covered.

The Third Circuit characterized the proposition thusly: "In the case of typical automobile insurance, the assumption is that when the insured is driving somebody else's car, the owner's insurance company is the primary carrier; the driver's policy provides excess coverage." *Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 172 (3d Cir.1987).

¶ 15 The record shows the Nationwide policy limits were not exhausted by the claims paid. Accordingly, the Mann excess clause is not triggered and Mann has no obligation to cover those losses.

¶ 16 Order reversed.

As stated by the Supreme Court of Indiana, the majority view is that "all else being equal, primary liability falls on the owner's insurer rather than the operator's insurer." *Indiana Ins. Co. v. American Underwriters, Inc.*, 261 Ind. 401, 304 N.E.2d 783, 785 (1973). A leading treatise on insurance law explains an owner's policy protects the owner and any other person using the insured vehicle with the owner's permission; an operator's policy protects the insured against liability from use of any motor vehicle. JOHN A. APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4254 (1979) (citations omitted).