**FIREMAN'S FUND INSURANCE COMPANY, as subrogee of Donald Miller, et al.**

v.

**EMPIRE FIRE & MARINE INSURANCE COMPANY**

No. CIV.A. 00–CV–2932.

United States District Court, E.D. Pennsylvania.

Aug. 1, 2001.

David L. Rohde, Havertown, PA, for Plaintiffs.

Donald M. Grimes, Kelly, Grimes, Pietrangelo and Vakil, Media, PA, for Defendant.

## MEMORANDUM

LUDWIG, District Judge.

▮ Plaintiff Fireman's Fund Insurance Company, as subrogee of Donald Miller and Buck Run Transport, Inc., moves for summary judgment against defendant Empire Fire & Marine Insurance Company on the issue of liability. Fed.R.Civ.P. 56.[1] Jurisdiction is diversity, 28 U.S.C. § 1332, and Pennsylvania law governs substantive issues. The motion will be granted in part and denied in part.

The facts in this declaratory judgment action are set forth in *Fireman's Fund Ins. Co. v. Empire Fire & Marine Ins. Co.*, 152 F.Supp.2d 687, 688 (E.D.2001). There it was determined that the ICC endorsement in FFIC's policy and Miller's display of BRT's ICC placard on his trac-

tor do not make FFIC the primary insurance provider as a matter of law.[2] *Id.* at 691. Thereafter, the parties filed supplemental briefs on two outstanding issues in this case: (1) the extent of coverage each owes under the "Other Insurance" provisions in their policies, and (2) whether clean-up costs are imposable on Empire.

▮ As to the first issue, the parties dispute the interpretation of Empire's "Other Insurance" provision.[3] In Empire's view, the other insurance provisions in both policies purport to provide excess coverage. Therefore, Empire maintains, the policies are irreconcilable, and both insurers must share the loss equally. *See American Cas. Co. of Reading Pa. v. PHICO Ins. Co.*, 549 Pa. 682, 693, 702 A.2d 1050, 1056 (1997) (adopting equal shares method). On the other hand, FFIC, while conceding excess coverage,[4] argues that Empire's policy is primary.

▮ "When interpreting a contract of insurance it is necessary to consider the

1. The interpretation of an insurance policy is a question of law. *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). "Whether a particular loss is within the coverage of an insurance policy is such a question of law and may be decided on a motion for summary judgment in a declaratory judgment action." *Bowers v. Feathers*, 448 Pa.Super. 263, 268, 671 A.2d 695, 697 (1995) (quoting *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 441 Pa.Super. 446, 451, 657 A.2d 1252, 1254 (1995)).

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir.2001).

2. Miller is the named insured in Empire's policy, and BRT is the named insured in FFIC's policy. Empire's policy covers Miller's tractor and BRT's "non-owned trailer." FFIC's policy covers the trailer. *See Fire-*

*man's Fund Ins. Co.*, 152 F.Supp.2d at 687 n.1.

3. As noted in the memorandum of April 19, 2001:

There are generally three types of "other insurance" clauses—excess, pro rata, and escape. Excess clauses provide additional coverage once the policy limits of other policies are exhausted. Pro rata provisions allocate financial responsibility between concurrent policies. An escape clause releases the insurer from all liability to the insured if other coverage is available.

*Fireman's Fund Ins. Co.*, 152 F.Supp.2d at 691 n. 12 (quoting *Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 166 (3d Cir.1988)).

4. *See* pltf. mem. at 5 ("Since FFIC provided only excess coverage and Empire's coverage is on a primary basis, there is no 'other applicable insurance' that could legally be found to

intent of the parties as manifested by the language of the instrument. Where the policy language is clear, the contract will be applied as written." *Bowers,* 448 Pa.Super. at 268, 671 A.2d at 697 (citation omitted).

■ Empire's policy:

SECTION V TRUCKERS CONDITIONS

B. GENERAL CONDITIONS

6. OTHER INSURANCE—PRIMARY AND EXCESS INSURANCE PROVISIONS

a. This Coverage Form's liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered "auto" while hired or borrowed from you by another "trucker." However, while a covered "auto" which is a "trailer" is connected to a power unit, the Coverage Form's Liability Coverage is:

(1) on the same basis, primary or excess, as for the power unit if the power unit is a covered "auto."

(2) excess if the power unit is not a covered "auto."

b. Except as provided in paragraph a. above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

\* \* \* \* \* \*

d. When this Coverage Form and any other Coverage Form, policy or self-insurance covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverages Forms, policies or self-insurance covering on the same basis.

Cmplt. ex. A.[5]

The FFIC policy:

SECTION IV BUSINESS AUTO CONDITIONS

B. GENERAL CONDITIONS

5. OTHER INSURANCE

A. For any covered auto you own, this coverage form provides primary insurance. For any covered auto you don't own, the insurance provided by this coverage form is excess over any other collectible insurance. However, while a covered auto which is a trailer is connected to another vehicle, the liability coverage [that] this coverage form provides for the trailer is:

(1) excess while it is connected to a motor vehicle you do not own.

(2) primary while it is connected to a covered auto you own.

\* \* \* \* \* \*

C. When this coverage form and any other coverage form or policy covers on the same basis, either excess

fall under Empire's 'other collectible insurance' clause.").

5. Empire defines "auto" as "a land motor vehicle, trailer, or semitrailer designed for

travel on public roads[.]" "Trucker" means "any person or organization engaged in the business of transporting property by 'auto' for hire."

or primary, we will pay only our share. Our share is the proportion that the limit of insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis.

Cmplt. ex. B.

As an initial matter, FFIC misapprehends that, under the first sentence of § V(B)(6)(a) and under § V(B)(6)(a)(1) of Empire's policy, "Empire stood alone in the position of primary coverage." Pltf. mem. at 4–5. Neither Miller's tractor nor BRT's trailer (*i.e.*, a covered auto) was *hired or borrowed by* Miller. On the contrary, the tractor was *hired or borrowed from* Miller by BRT (another trucker). Therefore, the second sentence of § V(B)(6)(a) is operable.[6]

The pertinent inquiry was stated in the memorandum of April 19, 2001—and is restated here:

Under § V(B)(6)(a) of Empire's policy, Miller's tractor was a "covered auto,"

and, at the time of the accident, it was leased to BRT, a "trucker." It follows that if FFIC's policy encompasses the tractor—*i.e.*, as "other collectible insurance"—Empire's coverage is also excess; otherwise, Empire's policy is primary under V(B)(6)(b).

*Fireman's Fund Ins. Co.*, 152 F.Supp.2d at 692 (footnotes omitted).

■ Consonant with Empire's long held view, FFIC's policy is "other collectible insurance." In construing the term in another tractor-trailer accident, our Court of Appeals rejected the view that the "other insurance must be on the underlying vehicle itself, rather than simply available to the insured generally from the accident." *Contrans*, 836 F.2d at 171.[7] Instead, the "general rule [is] that, for insurance coverage purposes, the tractor and trailer are treated as one operating unit; coverage on the one effectively serves as coverage on the whole."[8] *Id.* at 172.

---

**6.** This ongoing misconception may account in part for FFIC's position that there is "a significant public policy concern to consider with regard to Empire Insurance, the policy it wrote, and its behavior in light of the accident of March 17, 1993, involving its insured and the tractor he owned." Pltf. supp. mem. at 5. Further, "it would be entirely equitable to require Empire to pay the costs of primary coverage, including cleaning-up, in response to its bad-faith handling of this matter, pithy settlement posture, unconscionable policy, and unclean hands. This kind of remedy sends a clear message, and shapes behavior." *Id.* at 7. Nevertheless, despite Empire's refusal to accept its quantum of responsibility, it is necessary to limit this decision to matters of contractual law.

**7.** In *Contrans*, St. Paul insured the trailer; Old Republic, the tractor. The decision, in relevant part, construed a provision in St. Paul's policy that read: "the insurance provided by this policy is excess over any other collectible insurance." 836 F.2d at 171. Old Republic asserted that since it did not insure

the trailer, there was not "other collectible insurance" over which St. Paul's coverage could be excess. The argument was rejected as overly narrow: "[s]ince other insurance, specifically intended to cover liabilities arising from this accident, is available, *viz.*, Old Republic's coverage on the tractor, St. Paul's obligations do not ripen until such other insurance is exhausted." *Id.* at 172.

**8.** FFIC cites *Nationwide Ins. Co. v. Horace Mann Ins. Co.*, 759 A.2d 9, 13 (Pa.Super.2000) for the proposition that excess coverage is not considered "collectible insurance" as relates to the underlying primary coverage. There, the pro rata provision of the Nationwide policy ("In any loss involving the use of your auto, we will be liable for only our share of the loss if there is other collectible liability insurance") was compared with the excess clause of the Horace Mann policy ("If an insured is using . . . a non-owned car, our liability insurance will be excess over other collectible insurance"). *Id.* at 11. The decision held that "the Mann policy, while

■ In this circumstance, it is reasonable (and not uncommon) for both insurers to provide excess coverage. "Excess insurance coverage typically arises when the policyholder is driving a non-owned vehicle, or in the case of trailers, when the trailer is attached to a non-owned vehicle." *Id.* at 171–72 (footnotes omitted). From FFIC's perspective, "when the insured has attached its trailer to somebody else's vehicle, the insurance procured by the owner of that vehicle is [thought to be] the primary source of coverage. Only if the owner's insurance is insufficient does the trailer coverage become operative." *Id.* at 172. Likewise, as to Empire, a tractor owner's policy is often excess where the tractor is leased to a freight carrier.[9]

■ "Where two policies each purport to be excess over the other, such clauses are mutually repugnant; both must be disregarded and the insurers must share in the loss."[10] *Nationwide Ins. Co.*, 759 A.2d 9, 11–12 (Pa.Super.2000) (cautioning that the equal shares method

should be applied only where two clauses are truly irreconcilable, such that giving literal effect to both would result in neither policy covering the loss). In such a situation, each insurer must contribute equally towards any settlement, judgment or expenses.[11] *See American Cas. Co.*, 549 Pa. at 693, 702 A.2d at 1056; *Hoffmaster v. Harleysville Ins. Co.*, 441 Pa.Super. 490, 657 A.2d 1274 (1995); *see also* Ostrager & Newman, *Handbook on Insurance Coverage Disputes*, §§ 11.03[c][2], 11.04 (10th ed.2000). Accordingly, Empire will be required to reimburse FFIC half the costs incurred by FFIC to defend and ultimately settle the personal injury suit brought by Zeccardi against Miller and BRT.

As to responsibility for the clean-up of the spilled fuel,[12] the policies have identical language as to pollution coverage:

> We will also pay all sums an insured legally must pay as a covered pollution cost or expense to which this insurance applies, caused by an accident and resulting from the ownership, maintenance

---

'applicable,' was 'collectible' only after the Nationwide policy was exhausted." *Id.* at 13.

*Nationwide* follows the "majority view" of reconciling the pro rata and excess clauses "by interpreting the policy containing the excess clause as providing secondary coverage." Ostrager & Newman, *Handbook on Insurance Coverage Disputes*, § 11.03[d][1][A] (10th ed.2000). However, *Nationwide* is not on point. Here, there are two competing *excess* clauses.

9. *See, e.g., Transport Indem. Co. v. Home Indem. Co.*, 535 F.2d 232, 238 (3d Cir.1976) (truckman's endorsement in tractor-owner lessor's policy interpreted to be excess coverage); *Walter v. Dunlap*, 368 F.2d 118, 121 (3d Cir.1966) (tractor-trailer owner's insurance contract provided excess coverage when vehicle was leased to another engaged in business of transport by automobile and lessee's policy, which contained no such limitation, was primary); *Diamond State Ins. Co. v. Ranger Ins. Co.*, 47 F.Supp.2d 579, 590–91 (E.D.Pa.1999) (where truck was dispatched by freight trans-

portation company sublessee, coverage of sublessee's insurer was primary, and truck owner's insurance was excess); *Maryland Cas. Co. v. City Delivery Serv., Inc.*, 817 F.Supp. 525, 531–32 (M.D.Pa.1993) (tractor lessor's liability policy was excess for injuries sustained while tractor was under lease to another trucker).

10. " 'Other insurance clauses are deemed mutually repugnant when they are irreconcilable and mutually exclusive; that is, following the express terms of one policy would be in direct conflict with the express dictates of another policy.' " *Nationwide*, 759 A.2d at 11–12.

11. Under "the equal shares method" adopted in *American Casualty Company*, each insurer is to match payments within the limits of the lower policy, and the remaining loss is to be paid from the larger policy up to its limits. 549 Pa. at 693, 702 A.2d at 1056.

12. According to the complaint, 7,500 gallons were spilled. Cmplt. ¶ 10.

or use of covered autos. However, we will only pay for the covered pollution cost or expense if there is either bodily injury or property damage to which this insurance applies that is caused by the same accident.

Cmplt. ex. A; ex. B.

Under both policies, a "covered pollution cost or expense" means any expense arising out of:

1. Any request, demand or order; or
2. Any claim or suit by or on behalf of a governmental authority demanding that the insured or others test for, monitor, clean up, remove, contain, treat detoxify or neutralize, or in any way respond to or assess the effects of the pollutants.

Cmplt. ex. A; ex. B.[13]

The parties dispute the applicability of certain "exclusions" contained in Empire's policy.[14] Empire cites § II(B)(6) (*i.e.*, the "Care, Custody and Control" exclusion), which states that "[t]his insurance does not apply to ... [a] covered pollution cost or expense involving property transported by the insured or in the insured's care, custody or control." Cmplt. ex. A. Although FFIC does not mention this provision,[15] it is indisputable that because the oil was transported by Miller (or was in his care, custody or control), § II(B)(6) would apply if the oil clean-up was a "covered pollution cost or expense." However, because the record is deficient as to the circumstances surrounding the clean-up, and relevant argument has not been submitted by the parties, ruling on this issue will be deferred.

An order follows.

## *ORDER*

AND NOW, this 31st day of July, 2001, upon consideration of the motion of plaintiff Fireman's Fund Insurance Company, as subrogee of Donald Miller and Buck Run Transport, Inc., for partial summary judgment, the following is ordered:

1. Empire will reimburse FFIC for half the costs FFIC incurred to de-

---

**13.** The material in BRT's trailer was a "pollutant," which is defined under both policies as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Cmplt. ex. A; ex. B.

**14.** Insofar as both parties rely on the other insurance clauses to argue that the other is primary, these assertions have been considered and rejected. Pltf. supp. mem. at 7–8 ("Empire's primary coverage on the tractor and a connected trailer applies to the clean-up costs."); def. supp. mem. at 12 ("[E]ven if Empires [sic] exclusion isn't applicable, Empire's policy would be excess over the primary coverage of Fireman's Fund with regard to the trailer and, therefore, its contents.").

**15.** Instead, FFIC relies on § II(B)(11) (*i.e.*, the "Pollution" exclusion) of Empire's policy, as well as Empire's "Business Autos and Truckers Coverage Forms" endorsement, and maintains that Empire's policy "essentially excludes any materials that are either being on-loaded or off-loaded, transported for Mr. Miller's benefit, or in a variety of instances that do not apply to the facts of the matter before this court." Pltf. supp. mem. at 8.

Presumably, FFIC is referring to the definition of "covered pollution cost or expense" in Empire's Business Auto and Truckers endorsement, which explicitly excludes:

[A]ny cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

b. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insureds".

Cmplt. ex. A.

fend and settle the personal injury action of *Zeccardi v. Miller, et al.*, Delaware County Court of Common Pleas, Civ. No. 94–4553. By August 6, 2001, counsel will confer and attempt to agree on this amount.

2. On Wednesday, August 8, 2001, at 2:30 p.m., a hearing will be held to determine whether Empire is excused from liability as to clean-up costs under § II(B)(6) of its policy. The parties will present argument and evidence on the issue, as set forth in the accompanying memorandum.