**Keith E. IRVIN, et al., Plaintiffs,**

v.

**Kenneth E. RHODES, et al., Defendants,**

**Budget Rent A Car of Missouri, Appellant,**

**State Farm Mutual Automobile Insurance Company, Respondent.**

**No. WD 52144.**

Missouri Court of Appeals, Western District.

July 23, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 27, 1996.

Application to Transfer Denied Oct. 22, 1996.

Gary M. Steinman, Gladstone, for appellant.

Phillip B. Grubaugh, Charles W. Phillips, Deacy & Deacy, Kansas City, for respondent.

Before ULRICH, C.J., P.J., and FENNER and BRECKENRIDGE, JJ.

FENNER, Judge.

This matter comes before us as a result of the competing motions for summary judgment filed by Budget Rent A Car of Missouri ("Budget") and State Farm Mutual Automobile Insurance Company ("State Farm"). Both parties acknowledge that there is no dispute as to the material facts of the case and that summary disposition of the case is appropriate.

The record reveals that Kenneth and Mary Ann Rhodes were insured under a State Farm automobile insurance policy covering a 1987 Cadillac that they owned. Around Christmas 1990, the insured Cadillac was stolen. The theft was reported to the police and to State Farm by the Rhodes. State Farm authorized the Rhodes to rent an automobile from Budget to use until the Cadillac was either recovered or the loss adjusted.

Mrs. Rhodes rented a 1991 Plymouth Acclaim from Budget as a temporary substitute for the Cadillac on December 29, 1990. The rental was authorized by State Farm and State Farm paid the rental charge pursuant to the terms of the insurance policy issued to the Rhodes. State Farm did not see the rental agreement or approve of its terms prior to Mrs. Rhodes executing the agreement.

When she rented the car, Mrs. Rhodes listed her husband as an additional driver of the automobile. She also refused the optional collision and comprehensive deductible waiver offered by Budget for an additional charge. The language of the deductible waiver refers the lessee to paragraph 9 of the overall lease agreement,[1] which states:

(a) *LESSEE HEREBY COVENANTS AND WARRANTS TO BUDGET THAT HE IS CURRENTLY INSURED FOR AUTOMOBILE BODILY INJURY AND PROPERTY DAMAGE LIABILITY (INCLUDING PERSONAL INJURY PROTECTIONS AND UNINSURED MOTORIST COVERAGES, WHERE REQUIRED BY LAW) AND FOR COLLISION AND COMPREHENSIVE COVERAGES FOR TEMPORARY SUBSTITUTE VEHICLES OR DRIVE–OTHER–CAR EXTENSIONS.* Lessee hereby acknowledges that BUDGET, relying upon Lessee's aforementioned covenant and warranty, is not providing any type of Automobile Bodily Injury or Property Damage Liability Insurance coverage (including any Personal Injury Protection or Uninsured Motorist coverage), or any Collision or Comprehensive Insurance on the Temporary Substitute Vehicle for either the benefit of Lessee or any other person. (emphasis in original)

(b) . . . .

(c) Notwithstanding anything herein contained, if any of the terms, conditions, limitations or restrictions of this Agreement are in conflict with the laws of the state in which this Agreement is executed, then this Agreement is hereby amended to conform with such laws. The limits of any automobile liability protection required to be provided to Lessee hereunder the law of any state shall be in the minimum amount required by that state's financial responsibility laws, *provided however, that if there is other valid and collectable automobile liability protection or insurance, whether primary, excess or contingent, available to Lessee or any other person, and the limits of such protection or insurance are sufficient to pay damages up to the minimum of the applicable financial responsibility law, no-fault or uninsured or underinsured motorist law, then no damages are collectable from BUDGET under its automobile liability protection.* (emphasis added)

Budget did not maintain liability insurance as it is commonly considered on the vehicles it owned and rented to the public; rather, Bud-

---

1. The parties go to great length, and we agree, that the situation presented by the "lease" in question is a traditional, short term, car rental that is not to be confused with the long-term lease currently used as a popular financing tool in the automobile sales industry. The issues presented by the two situations are drastically different.

get was a qualified self-insurer under § 303.220, RSMo 1990 Supp.[2]

On January 8, 1991, while operating the Budget rental car, Kenneth Rhodes was involved in a collision with an auto owned and operated by Keith Irvin. No personal injuries were sustained; all that was involved was property damage to the two vehicles.

Irvin initiated litigation against Kenneth Rhodes in February 1993 to recover the property damage he claimed he sustained as a result of the collision. Mr. Rhodes, in turn, filed a third-party petition against Budget praying for contribution and/or indemnity from Budget for any and all damages awarded against him and in favor of Irvin. Budget denied any responsibility in response to Rhodes' petition. Both parties filed motions for summary judgment on the third-party claims, with the court granting Budget's motion and denying Rhodes' motion on January 27, 1995.

On May 10, 1995, State Farm filed a separate declaratory judgment action seeking a declaration that, as the certified self-insurer and owner of the vehicle rented to and driven by Rhodes, Budget was required by Missouri law to provide Rhodes with $10,000 property damage liability coverage that was primary to any coverage Rhodes had under his personal policy with State Farm. State Farm alleged the coverage it provided was excess based on the following language within its policy:

If there is other liability coverage:

3. Temporary Substitute Car, Non-Owned Car, Trailer[3]

If a temporary substitute car, a non-owned car or a trailer designed for use with a private passenger car or utility vehicle has other vehicle liability coverage on it, then this coverage is excess.

Rhodes then filed a request for trial de novo in the case initiated by Irvin, and the case was transferred to the Circuit Court.

The two cases arising out of the January 8, 1991 accident were then consolidated. State Farm and Rhodes moved for summary judgment against Budget, with Budget responding by filing a competing summary judgment motion against State Farm and Rhodes. On November 28, 1995, the trial court granted the summary judgment motions of State Farm and Rhodes, declaring that Budget insured Rhodes for property damage and that its responsibility for the damage sustained by Irvin was primary to that of State Farm. On December 12, 1995, following a hearing on Irvin's case, the court entered judgment in favor of Irvin and against Rhodes for property damage in the amount of $3,750.

Following entry of the judgment in favor of Irvin, Budget filed its notice of appeal to this court naming State Farm as the respondent with regard to the coverage issue. No party has appealed the money judgment entered in favor of Irvin and against Rhodes.

## I. STANDARD OF REVIEW

The Missouri Supreme Court provided an exhaustive analysis of summary judgment practice and review in its opinion in *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993). Appellate review of summary judgments is essentially *de novo*. *Id.* at 376. The criteria on appeal for testing the propriety of summary judgment are no different than those which the trial court should have employed initially. *Id.* As the trial court's initial judgment is founded on the record submitted and the law, there is no need for the appellate court to defer to the trial court's granting of the summary judgment motion. *Id.*

When considering the appeal, the Court will review the record in the light most favorable to the party against whom judgment is sought. *State ex rel. Conway v. Villa*, 847

**2.** Section 303.220.2 provides:

Any person in whose name more than twenty-five motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the director....

There is no dispute in this matter that Budget was a qualified and certified self-insurer.

**3.** The parties do not dispute that the vehicle rented from Budget by the Rhodes qualifies as a temporary substitute car within the terms of the State Farm policy.

S.W.2d 881, 886 (Mo.App.1993). The movant bears the burden of establishing a right to judgment as a matter of law on the record as submitted; any evidence in the record that presents a genuine issue as to the material facts defeats the movant's prima facie showing. *ITT Commercial Fin.,* 854 S.W.2d at 382. A "genuine issue" exists where the record contains competent material that evidence two plausible, but contradictory, accounts of the essential facts. *Id.* A "genuine issue" is a dispute that is real, not merely argumentative, imaginary, or frivolous. *Id.*

The non-movant is accorded the benefit of all reasonable inferences from the record. *Martin v. City of Washington,* 848 S.W.2d 487, 489 (Mo. banc 1993). If the movant requires an inference to establish his right to judgment as a matter of law and the evidence reasonably supports an inference other than that alleged by movant, a genuine dispute exists and the movant's prima facie showing fails. *ITT Commercial Fin.,* 854 S.W.2d at 382. The key to summary judgment is the undisputed right to judgment as a matter of law, not simply the absence of a fact question. *Id.* at 380.

## II. *SUMMARY JUDGMENT ENTITLEMENT*

■ State Farm's motion is based on the contention that its policy is excess and Budget's coverage primary with respect to the accident in question because Budget, as the self-insured owner of the vehicle driven by Kenneth Rhodes, was required by the Missouri Motor Vehicle Financial Responsibility Law ("MVFRL") to provide coverage to him and that coverage could not be waived by the rental agreement. In response and in it's own motion, Budget properly frames the issue as whether the MVFRL mandates that a lessor's owners liability coverage be primary to that of a lessee's liability policy which provides other vehicle coverage for lessee's negligence. We believe there is no such mandate within the MVFRL.

The plain purpose of the MVFRL is to make sure that people who are injured on highways may collect damage awards, within limits, against negligent motor vehicle operators. *Halpin v. American Family Mutual*

*Ins. Co.,* 823 S.W.2d 479, 482 (Mo. banc 1992). The MVFRL is, essentially, a compulsory insurance law. *Id.* at 481. To accomplish the purpose of the MVFRL, the legislature imposed the following obligations on a vehicle owner:

1. No owner of a motor vehicle registered in this state shall operate the vehicle, or authorize any other person to operate the vehicle, unless the owner maintains the financial responsibility as required in this section. Furthermore, no person shall operate a motor vehicle owned by another with the knowledge that the owner has not maintained financial responsibility unless such person has financial responsibility which covers his operation of the others vehicle.

§ 303.025.1, RSMo 1991 Supp. State Farm correctly points out that Budget was prohibited from allowing Kenneth Rhodes to drive its rental car unless Budget maintained the financial responsibility as required in this section. Budget does not dispute this assertion. The question presented is whether Budget can "escape" liability pursuant to the terms of the rental agreement without frustrating the purposes of the MVFRL.

Throughout its brief to this court, it is State Farm's contention that Budget cannot avoid primary liability by invoking the "escape clause" within the rental agreement. Initially we must determine what clause in the rental agreement State Farm is referring to, as its argument is somewhat convoluted and appears to refer to statements in paragraph 9(a) and 9(c) of the rental agreement. With regard to paragraph 9(a), we will assume, without analyzing the validity of section 9(a), that State Farm is correct in stating that Budget cannot circumvent the requirements of the MVFRL by contracting away its responsibility to provide insurance coverage based on the lessee's covenant and warranty that he or she is currently insured for temporary substitute vehicles or drive other car extensions.

We proceed on this assumption because we believe an analysis of paragraph 9(c) is dispositive of this case. This is due to the fact that paragraph 9(c) begins by reforming the agreement to comply with Missouri law if

any of the terms of the agreement, including paragraph 9(a), are in conflict with the law of this state. The validity of section 9(a), for the purposes of this case, is inconsequential.

Paragraph 9(c) states that Budget provided coverage up to the minimum liability limits of the state on the vehicles it owns and rents to the public, then adds the proviso that "if there is other valid and collectible automobile liability protection or insurance, *whether primary, excess or contingent* available to Lessee or any other person, and the limits of such protection or insurance are sufficient to pay damages up to the minimum of the applicable financial responsibility law," then no damages can be collected from Budget. This clause does not seek to create an exception to mandatory coverage required by the MVFRL as alleged by State Farm. The clause merely seeks to escape liability where other coverage is available up to the minimum financial responsibility limits. If no other coverage is available, Budget remains liable under its coverage.

State Farm's position is that this type of "escape clause" is inconsistent with the purposes of the MVFRL. We disagree. As stated earlier, the general purpose of the law is to make sure that people who are injured on highways may collect damage awards, within limits, against negligent motor vehicle operators. *Halpin*, 823 S.W.2d at 482. The escape clause in the Budget rental agreement does not seek to exclude from coverage certain individuals or certain situations;[4] instead, the escape clause is a form of "other insurance" clause that shifts primary liability to another insurer or party where other primary insurance is available to cover the same loss. An escape clause does not limit or bar an injured party's recovery, but merely shifts the primary liability among negligent defending parties or their insurers.

■ Missouri courts recognize the freedom to contract in liability insurance. *Halpin*, 823 S.W.2d at 483. Neither the language of the MVFRL nor the public policy behind it bars contract terms that purport to shift primary liability under insurance policies. The *Halpin* line of cases cited by State Farm in support of their position deal with circumstances where an insurer seeks to exclude an individual or situation from the compulsory coverage that the MVFRL mandates. In such situations, the freedom to contract is restricted. An exclusion in coverage is not presented by the facts of the case at bar which provide for a shift of primary liability coverage under certain, limited circumstances. The clauses in question are valid "other insurance" clauses under the MVFRL.

■ Having concluded that the escape clause in the Budget rental agreement[5] is a valid "other insurance" clause, we must analyze its application in conjunction with the "other insurance" clause in the State Farm policy. Controlling this analysis is *State Farm Mut. Auto. Ins. Co. v. Western Casualty & Surety Co.*, 477 S.W.2d 421, 427 (Mo. banc 1972). In *Western Casualty*, the Missouri Supreme Court determined the applicability of two primary insurance policies[6] covering the same loss based on the specificity of the respective "other insurance" clauses. The State Farm policy interpreted by the *Western Casualty* court provided that nonowned automobile coverage "shall be excess over other collectible insurance" while the Western Casualty policy provided that no damages were collectable under the policy "[i]f there is other valid and collectible insurance, whether primary, excess or contingent,

---

**4.** As was the case in *Halpin,* where the household exclusion was involved, in *Ingram v. Shelter Mutual Ins. Co.,* 922 S.W.2d 854 (Mo.App.1996), where an endorsement excluding a particular driver was involved, and in *State Farm Mut. Auto. Ins. Co. v. Liberty Mut. Ins. Co.,* 883 S.W.2d 530, 532–33 (Mo.App.1994), where the insurer claimed the individual driving the vehicle at the time of an accident was not an authorized driver and, therefore, excluded from coverage.

**5.** Because Budget is a certified self-insurer without a written insurance policy as we convention-

ally think of one, the terms of the insurance Budget provides can be ascertained only from the language of the rental agreement that is shared with the lessees.

**6.** The case at bar also involves two primary policies as opposed to true excess or umbrella policies. For a discussion of the interplay between "other insurance" clauses involving the latter types of policies in light of *Western Casualty,* see *Planet Ins. Co. v. Ertz,* 920 S.W.2d 591 (Mo.App. 1996).

available to ... the customer and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit." 477 S.W.2d at 426.

The *Western Casualty* court determined that the specific escape clause in the Western Casualty policy should prevail over the general excess clause in the State Farm policy. 477 S.W.2d at 427. The rationale for this holding was that "the insurer whose policy contains a specific 'no liability' clause anticipated the possibility of the existence of an 'excess' clause in the policy of [another] and expressly contracted against liability in that situation." *Id.*

Applying this reasoning to the case at bar, the language of the escape clause in the Budget rental agreement should be given effect over the excess clause in the State Farm policy. Budget is not liable for the property damage caused by Kenneth Rhodes in this fact situation. The trial court erred in granting State Farm's motion for summary judgment. The order of the trial court granting State Farm's motion is reversed and the cause remanded with direction that summary judgment be entered in favor of Budget.

All concur.