**ALLSTATE INSURANCE CO., Plaintiff,**

v.

**TOKIO MARINE & NICHIDO FIRE INSURANCE CO., LTD, Defendant.**

**Civil No. 05–CV–4319.**

United States District Court, E.D. Pennsylvania.

Dec. 8, 2006.

Kenneth Goodman, Rowley & Goodman, Reading, PA, for Plaintiff.

David M. McCormick, H. Joseph Byron, III, McCormick & Priore, P.C., Philadelphia, PA, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

RUFE, District Judge.

This is a declaratory-judgment action in which the parties seek clarification of coverage under conflicting insurance-policy-contract provisions related to an automobile accident. Presently before the Court are Plaintiff's and Defendant's Cross–Motions for Summary Judgment, each seeking a determination that the other party's policy must provide primary coverage. Upon consideration of the parties' Joint Stipulation of Fact and Exhibits, Cross–Motions, and supporting Memoranda, and after oral argument thereon, both Plaintiff's and Defendant's Motions for Summary Judgment are **DENIED.** Instead, for the reasons that follow, the Court finds as a matter of law that the policies are co-

primary, and that Plaintiff and Defendant must share the loss by equal shares.

## I. FACTUAL BACKGROUND

The facts in this case are undisputed and acknowledged by stipulation.[1]

On October 18, 2004, Dina Conrad was involved in a motor-vehicle accident while driving a 2003 Infiniti I35 four-door sedan, a car loaned to her by Bennett Infiniti, Inc. ("Bennett Infiniti") for use while her car was in the dealership service center for repairs.[2] The occupants of the other car involved in the accident, Mr. Eddie Rodriguez and Ms. Carol Sealey, were allegedly injured in the accident and have brought personal-injury actions against Ms. Conrad that require defending.[3]

At the time of the accident, Ms. Conrad was personally insured by Allstate Property and Casualty Insurance Company ("Allstate").[4] The loaner vehicle she was driving was insured under a Tokio Marine and Nichido Fire Insurance Company, Ltd. ("Tokio Marine") policy purchased by the vehicle's owner, Bennett Infiniti.[5]

In addition to coverage for her personal automobile, Ms. Conrad's Allstate policy includes as an insured auto:

> A substitute four wheel private passenger auto or utility auto, not owned by you or a resident relative being temporarily used with the permission of the owner while your insured auto is being serviced or repaired, or if your insured auto is stolen or destroyed.[6]

The policy also includes an "other-insurance" clause that seeks to make its coverage excess if another policy applies to an accident. The clause, entitled "If There is Other Insurance," reads, in relevant part:

> If an insured person is using a substitute private passenger **auto** or non-owned **auto, our** liability insurance will be excess over other collectible insurance.[7]

The Tokio Marine policy also contains an other-insurance clause that seeks to make its coverage excess over any other collectible insurance. Attached as an amendment, it reads:

> For any covered "auto" you own while it is on loan to others, the insurance provided by this Coverage Form is excess over any other collectible insurance.[8]

Additionally, at the time Ms. Conrad borrowed the Bennett Infiniti loaner vehicle, she signed a two-page "Loan Car Vehicle Agreement" (the "Agreement") detailing her rights and responsibilities pertaining to the loaner car.[9] On the front of the Agreement, she signed next to a provision that reads:

> I certify that I understand, & agree to the customer responsibilities as listed on the reverse side of this document & can provide valid primary insurance on the described loan car while it is in my possession.[10]

On the reverse side, a clause labeled "6. Liability Protection" reads, in part:

---

1. *See* Joint Stip. of Fact & Mot. Exs. [Doc. # 20–2].

2. *Id.* at 1, ¶¶ 1–3.

3. Pl.'s Mot. for Summ. J. [Doc. # 19] at 6. While this fact is not included in the parties' Joint Stipulation of Fact, it is undisputed by Defendant.

4. Joint Stip. of Fact & Mot. Exs. [Doc. # 20–2] at 2, ¶ 8.

5. *Id.* at 1, ¶ 4.

6. *Id.* at 48, [Ex. D].

7. *Id.* at 50, [Ex. D] (emphasis in original).

8. *Id.* at 39, [Ex. B].

9. *Id.* at 1, ¶ 7.

10. *Id.* at 40, [Ex. C].

CUSTOMER HEREBY ACKNOWL-
EDGES AND AGREES THAT, TO
THE EXTENT PERMITTED BY
LAW, THE LIABILITY PROTEC-
TION AFFORDED BY CUSTOMER'S
PERSONAL AUTOMOBILE INSUR-
ANCE CARRIER SHALL BE PRI-
MARY.[11]

The parties now dispute which policy provides primary coverage and which policy provides excess coverage related to Ms. Conrad's accident and the resulting personal-injury actions. Each party seeks summary judgment requiring the other party's policy to provide primary liability coverage.

## II. STANDARD FOR SUMMARY JUDGMENT

Disposition upon motion for summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[12] In this case, the Court is presented with cross-motions for summary judgment. The mere existence of cross-motions does not necessarily dictate that one motion will be granted and the other denied, thereby disposing of the case.[13] If, however, there are no genuine

issues as to any material fact, the Court may enter a final disposition by applying the relevant law to the undisputed facts.[14] In situations where the parties have stipulated to all of the material facts, as have the parties in this case, there is no genuine issue of material fact and only questions of law remain for the Court to decide.[15] As a result, the remaining dispute of law will be resolved by the Court at the summary-judgment stage.

## III. APPLICABLE LAW

A federal court sitting in diversity must apply the substantive law of the state in which it sits.[16] As there is no conflict-of-laws issue in this case and the parties have acknowledged in their motions and memoranda that Pennsylvania law shall apply, the Court will apply Pennsylvania state law to the undisputed facts.

## IV. DISCUSSION

The ultimate question before the Court is whether the Allstate policy or Tokio Marine policy should provide primary coverage in connection with the October 18, 2004 automobile accident. To determine primacy of coverage, the Court must examine the applicable insurance-policy contracts in conjunction with the Agreement signed by Ms. Conrad when she took pos-

---

11. *Id.* at 41, [Ex. C].

12. Fed.R.Civ.P. 56(c).

13. *See Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968).

14. *See generally* Fed.R.Civ.P. 56(c).

15. *See* Fed.R.Civ.P. 56, Notes of Advisory Comm. on 1987 Amendments to Rule ("A fact is not genuinely in dispute if it is stipulated ... by the parties...."). The stipulation must, however, resolve all material issues of fact so that there is no genuine factual dispute ripe for trial. An incomplete or equivocal stipulation may be insufficient to resolve all issues of material fact and, consequently,

summary judgment would be inappropriate. *See, e.g., Williams v. Chick,* 373 F.2d 330 (8th Cir.1967). In this case, the stipulation is sufficient to resolve any issue of material fact, leaving the Court to dispose of the case upon the cross-motions.

16. *Chamberlain v. Giampapa,* 210 F.3d 154, 158 (3d Cir.2000) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). This is, of course, as long as there is not a conflict-of-laws issue wherein a different state may have an overriding interest in having its law applied. There is no such issue in this case.

session of the loaner vehicle. Because the Agreement would, if given full literal effect, significantly alter the application of the relevant insurance policies, the Court will first examine its role in the primacy dispute.

## A. The Loan Car Vehicle Agreement

The legality and enforceability of an agreement identical to the one in this case has not previously been decided under Pennsylvania law. Therefore, in order to inform its analysis in the instant case, the Court has reviewed the decisions of a number of courts outside of Pennsylvania who were faced with substantially similar issues.[17] While these decisions are not binding upon the Court, they are worthy of examination as the Court attempts to resolve the difficult issues presented by this case.

The Court's investigation revealed that at least one court, a Missouri Court of Appeals, has enforced an agreement that shifts primary liability to the driver's personal insurance policy even when that policy includes an other-insurance clause making its coverage excess.[18] In *Irvin v. Rhodes*, the court addressed a question similar, though not identical, to that presently before this Court—that is, whether an agreement shifting primary liability from a rental-car company to the renter's personal insurer is legal and enforceable. The agreement at issue in *Irvin* shifted liability to the driver's personal insurer so long as the coverage exceeded the state's

required minimum level of financial responsibility under the Motor Vehicle Financial Responsibility Law ("MVFRL").[19] If the driver had sufficient personal insurance, the driver's personal policy would become primary—even if the policy contract included an other-insurance clause making its coverage excess—and the rental-car company would be relieved of any liability.[20] In fact, the driver's personal insurance-policy contract with State Farm included a clause that read: " 'If a temporary substitute car [or] non-owned car . . . has other vehicle liability coverage on it, then this coverage is excess.' "[21] After noting that the purpose of the state's MVFRL "is to make sure that people who are injured on highways may collect damage awards, within limits, against negligent motor vehicle operators,"[22] the court found that "[n]either the language of the MVFRL nor the public policy behind it bars contract terms that purport to shift liability under insurance policies."[23] Accordingly, the court found the agreement's liability-shifting provision to be a legally effective and enforceable other-insurance clause that successfully shifted primary liability to the driver's personal insurance, even though that policy contract made its coverage excess when other insurance applied.[24]

The *Irvin* court did not, however, address or even contemplate the undeniable contract-law implications of attempting to shift liability in contradiction of a provision in a preexisting contract. Insurance-poli-

---

17. The majority of these cases, however, involved liability-shifting provisions in the rental-car context, not the loaner-car context. The Court notes this difference, but believes that consideration of the cases is, nonetheless, valuable and informative.

18. *See Irvin v. Rhodes*, 929 S.W.2d 829, 833 (Mo.Ct.App.1996).

19. *See id.* at 830.

20. *See id.* at 830–31.

21. *See id.* at 831 (quoting the State Farm policy contract).

22. *See id.* at 832.

23. *See id.* at 833.

24. *See id.* at 833–34.

cy contracts are "governed by the principles applicable to contracts in general." [25] Like any contract, an insurance contract cannot be changed, altered, or modified without consideration [26] and the consent of both parties. [27] If either consent or consideration, or both, are absent from an attempt to modify a contract, then the proposed modification is void and the contract continues to operate as originally constructed. [28] Logically, a party to a contract cannot effectively consent to a proposed modification if it does not have notice of the added obligations that the modification will impose on the party. [29] Additionally, even if a party consents to a modification, added obligations may not be enforced against the party in the absence of supporting consideration. [30]

Whether or not the agreement at issue in Irvin violated the Missouri MVFRL, by allowing the liability-shifting provision in the rental agreement to, essentially, nullify the other-insurance clause in the State Farm policy contract, the court condoned a unilateral modification of the State Farm contract, without consent or consideration. [31] This Court cannot agree, and does not believe that the Pennsylvania Supreme Court would agree, that an insured can unilaterally modify an insurance-policy contract by subsequent agreement with a third party.

At least one other court, the Supreme Court of Michigan, has noted the significance of traditional contract principles when dealing with liability-shifting agreements. In *State Farm Mutual Automobile Insurance Co. v. Enterprise Leasing Co.*, [32] the Court addressed the legality and enforceability of car-rental agreements purporting to shift responsibility for providing primary liability coverage on rental vehicles to the driver's personal insurance providers. [33] While the State Farm Court ultimately based its decision that such agreements were unenforceable on the state's no-fault insurance act, it reiterated its holding by emphasizing that traditional principles of contract also invalidate such agreements. [34] As the *State Farm* Court noted:

> [e]ven if the driver could make a voluntary election to allocate the responsibility for coverage to the driver's insurer [without violating the no-fault act], the resulting agreement to allocate would still be void. Enforcing such an agreement would permit the driver to unilaterally dictate the insurance obligations of the parties. Those obligations are a matter of contract, and cannot be unilaterally reassigned. [35]

**25.** *J.M.P.H. Wetherell v. Sentry Reinsurance, Inc.*, 743 F.Supp. 1157, 1170 (E.D.Pa.1990) (citing *Zayc v. John Hancock Mut. Life Ins. Co.*, 338 Pa. 426, 13 A.2d 34, 38 (1940)).

**26.** *Id.* (citing *Wilcox v. Regester*, 417 Pa. 475, 207 A.2d 817, 821 (1965)).

**27.** *Id.* (citing *Murray v. John Hancock Mut. Life Ins. Co.*, 165 Pa.Super. 514, 69 A.2d 182, 183 (1949)); *see also Wilcox*, 207 A.2d at 821.

**28.** *See, e.g., Corson v. Corson's Inc.*, 290 Pa.Super. 528, 434 A.2d 1269, 1271 (1981) (holding that because there was neither assent nor consideration supporting a proposed modification to a contract, "there was no modification").

**29.** *See Wilcox*, 207 A.2d at 821 (holding that both parties must give fully informed consent for a modification to be enforceable).

**30.** *See id.*

**31.** As the court noted, "State Farm did not see the rental agreement or approve of its terms prior to Mrs. Rhodes executing the agreement." *Irvin*, 929 S.W.2d at 829. Clearly, neither consent nor consideration supported the attempted modification.

**32.** 452 Mich. 25, 549 N.W.2d 345, 350 (1996).

**33.** *See id.* at 347.

**34.** *Id.*

**35.** *Id.* (internal footnote citations omitted).

■ In the case presently before the Court, the Loan Car Vehicle Agreement attempted to shift primary liability from the Tokio Marine policy to the Allstate Policy, regardless of any provision in the Allstate policy contract that may have contradicted such a shift. The Allstate policy contract did, in fact, contain a conflicting other-insurance provision that the Agreement attempted to strike. While the contract provided for coverage of a substitute vehicle,[36] it also dictated that the coverage would be excess to any other collectible insurance.[37] Consequently, Ms. Conrad's adoption of the Agreement was an attempt, though almost certainly not a purposeful one, to modify the provisions and obligations contained in the contract she had previously entered into with Allstate.

By signing the Agreement, Ms. Conrad essentially attempted to strike the Allstate policy contract's other-insurance clause and enlarge Allstate's bargained-for obligations to include the provision of full primary coverage of a substitute vehicle. Allstate did not bargain for that obligation when it entered into its agreement with Ms. Conrad, and did not factor it into the calculation of Ms. Conrad's premium. Clearly, since the proposed modification was unknown to Allstate, it did not consent to such a change to the policy contract. Furthermore, even if Allstate had consented, Ms. Conrad did not provide any further consideration to Allstate that would have supported such a modification. It is well-settled that a party to a contract cannot unilaterally alter the obligations included in the contract without the consent of the other party and supporting consideration. Accordingly, since there was neither consent on Allstate's behalf, nor any consideration to support the proposed modification,

the provision of the Agreement attempting to shift primary coverage to Ms. Conrad's personal insurance carrier is legally inoperative and unenforceable.

It is important to note, however, that provisions such as the ones in Irvin, *State Farm*, and the instant case may not always present the contractual problems apparent in the case currently before this Court. For instance, if the Allstate policy contract had not contained an other-insurance clause limiting its coverage to excess, the Agreement would have effectively shifted primary liability to the Allstate policy. In that case, Allstate's obligations under the contract would not be modified because, without the existence of a provision limiting Allstate's coverage to excess when the insured was operating a substitute vehicle, the policy contract would provide for primary coverage in the loaner-car context. As a result, the insured would not be attempting to modify the contract unilaterally by declaring his or her personal insurance as primary, and the traditional contract principles that govern the instant case would not render the Agreement unenforceable.

In fact, this scenario has previously been tested and implicitly approved by a Pennsylvania state court. In *Progressive Classic Insurance Co. v. AVIS Rent A Car Systems, Inc.*,[38] the court considered whether a liability-shifting provision in a rental-car agreement could effectively shift primary coverage to the driver's personal policy when the driver declined supplemental insurance. The driver's policy contract with Progressive included a clause that provided coverage for " 'property damage for which an insured person becomes legally responsible because of an

---

36. *See* Joint Stip. of Fact & Mot. Exs. [Doc. # 20–2] at 48 [Ex. D].

37. *Id.* at 50 [Ex. E].

38. No. 05–507, 2006 WL 373552 (Pa. Common Pleas Ct. Feb. 13, 2006).

accident arising out of the use of a ... temporary substitute vehicle.' " [39] The policy contract did not contain an other-insurance clause limiting that coverage to excess. The court found that primary liability could be shifted without violating the MVFRL or, presumably, any principles of contract.[40]

Additionally, a case decided by a New Jersey Superior Court, *Kattoura v. Patel,*[41] illustrates how liability-shifting provisions do not necessarily violate basic tenets of contract. In *Kattoura,* Hertz Penske Truck Leasing ("Penske"), a truck-leasing company, carried an insurance policy on its fleet that provided excess coverage to its lessees' insurance policies.[42] Penske entered a leasing agreement with Kandall Fabricating and Supply Corp. ("Kandall") that required the company to obtain primary liability coverage in connection with the operation of the leased vehicle and restricted its own liability to excess.[43] Kandall obtained coverage through a policy contract that explicitly provided primary coverage for any leased auto and without any form of other-insurance clause.[44] After a Kandall employee was involved in an accident while driving a leased auto, a coverage dispute arose. The New Jersey Superior Court found that the liability-shifting provision in the leasing agreement was enforceable.[45] In so holding, the court noted that "the lessor and lessee of a rented vehicle, *and their insurance companies,* [are not precluded] from agreeing that the insurance coverage of one party shall be primary and the other excess." [46]

While neither court specifically addressed the implicit contract issues, the cases serve as examples of how a liability-shifting provision can operate without violating contract law. When such an agreement does not conflict with a provision in the driver's personal policy contract, it is fully effective at shifting primary coverage. Where the policy contract does not contain a conflicting other-insurance clause or the insurance companies participate in the bargaining, contract law will not render the agreement unenforceable.

Furthermore, the Court's decision in this case should not disturb such agreements in the rental-car-agency context. A specific provision of the Pennsylvania MVFRL appears to grant an exception to persons or entities in the business of leasing motor vehicles that permits the temporary termination the insurance they procure as owners, as long as they follow the required procedure.[47] According to section 1786(e)(5):

> In the case of a person who leases any motor vehicle from a person engaged in the business of leasing motor vehicles, the lessee shall sign a statement indicating that the required financial responsibility has been provided through the lessor or through the lessee's motor vehicle liability insurance policy coverage. The lessee shall submit the statement to the lessor.

39. *Id.* at \*2 (quoting the Progressive policy contract).

40. *Id.*

41. 262 N.J.Super. 34, 619 A.2d 1031 (1993).

42. *Id.* at 1032–33.

43. *Id.* at 1033.

44. *Id.*

45. *Id.*

46. *Id.* at 1034 (emphasis added).

47. *See* 75 Pa. Cons.Stat. Ann. § 1786(e)(5) (2006). Missouri's MVFRL does not appear to include an analogous provision, so the decision in *Irvin* is still somewhat puzzling to the Court.

This section, located under the title, "Obligations upon lapse, termination, or cancellation of financial responsibility," seemingly grants those in the business of leasing [48] motor vehicles the ability to make their insurance temporarily inapplicable or uncollectible, as long as the driver to whom they are leasing signs a statement indicating that the minimum required insurance is provided by the driver's personal coverage. Otherwise, the driver can purchase the insurance offered by the lessor, in which case the lessor's insurance will be collectible. Such an agreement does not conflict with the principles of contract previously noted by the Court because by making the lessor's insurance uncollectible by contract, in compliance with the MVFRL, an other-insurance clause in the driver's policy contract simply will not be triggered.

For example: A person who goes to a rental agency to rent a car has a personal insurance policy that includes coverage for temporary substitute vehicles. Her policy also includes an other-insurance clause stating that the policy's coverage will be excess if there is other applicable or collectible insurance. When renting the car, the person is explicitly informed that she must either purchase supplemental insurance from the rental agency or sign a statement that her personal insurance policy will provide the required financial responsibility coverage, making the rental agency's coverage inapplicable in accordance with section 1786(e)(5). This agreement, which shifts primary liability to her personal policy, is not an attempt to modify her personal policy contract because there is no longer any "other collectible or applicable" insurance that will trigger the excess clause and conflict with the provision making her personal policy primary. Accordingly, if she was involved in an accident, her personal policy would operate just as it was written: the excess-coverage, other-insurance clause would not be triggered because the rental agency's insurance is not applicable or collectible, and her insurer would provide primary coverage. As a result, the agreement would comply with both the Pennsylvania MVFRL, because of section 1786(e)(5), and traditional contract law.

This exception, however, is an extremely narrow one carved out by section 1786(e)(5) and should apply only to those persons or entities traditionally understood as in the business of leasing or renting motor vehicles. The same line of reasoning cannot be applied in the loaner-car context because, outside of section 1786(e)(5), the MVFRL requires that all

---

**48.** Unfortunately, there are no Pennsylvania cases interpreting or applying section 1786(e)(5), nor any commentary on whether "leasing" includes "renting." According to *Black's Law Dictionary,* however, "to lease" means "[t]o grant the temporary possession and use of ... movable property ... to another in return for rent or other consideration." A car-rental agency grants the temporary possession and use of movable property, automobiles, to renters in return for consideration, monetary payment.

Furthermore, there are two federal-court cases that deal with section 1786(e)(5). One of them, *Morris v. Slack,* 188 F.Supp.2d 645 (N.D.W.Va.2002) (applying Pennsylvania law), applied the section to facts involving a rental agency and a driver's waiver of the rental agency's insurance coverage. Without discussion, the court accepted that section 1786(e)(5) applies to rental-car agencies as "lessors" of motor vehicles.

In the absence of any binding interpretation of the section, the Court believes that the definition of "lease," the application of the section in the rental-agency context by the federal court in *Morris,* and the persuasive policy rationale for including rental agencies within the ambit of the section, suggest that the Pennsylvania Supreme Court would likely include car-rental agencies within the definition of entities "engaged in the business of leasing motor vehicles."

other vehicle owners maintain active financial responsibility on their vehicles at all times and that all permissive users of a vehicle be insured under the owner's insurance.[49] Consequently, owners who lend or loan a car to a permissive user cannot temporarily terminate their insurance or attempt to make their insurance uncollectible in the same way a rental or leasing agency is permitted under section 1786(e)(5). On the other hand, agreements that attempt to shift primary liability while maintaining applicable insurance in the form of excess coverage may not violate the MVFRL because the owner continues to provide financial responsibility. In situations similar to the instant case, however, these agreements may violate the principles of contract prohibiting unilateral modification, depending on the specific provisions of the relevant policy contracts. It is, thus, contract law and not the MVFRL that will render unenforceable liability-shifting provisions such as the one at issue in this case.

**B. The Coverage Dispute in the Absence of the Agreement**

Having decided that the provision attempting to shift primary liability to Ms. Conrad's personal insurance policy is unenforceable, the Court must now resolve the primacy dispute by examining the policy contracts and their relevant coverage and other-insurance provisions. Ultimately, the Court must determine whether either other-insurance clause is an "escape" clause, and, if not, whether the clauses are

mutually repugnant excess-coverage clauses subject to judicial nullification.

**1. The Coverage Clauses**

The plain language of both the Allstate and the Tokio Marine policy contracts establishes that each policy covered the vehicle Bennett Infiniti loaned to Ms. Conrad. The Allstate contract includes coverage for "[a] substitute four wheel private passenger auto or utility auto, not owned by you or a resident relative being temporarily used with the permission of the owner while your insured auto is being serviced or repaired."[50] The loaner vehicle clearly falls within that definition. The Tokio Marine coverage provides coverage for all "owned autos," including those acquired after the policy began.[51] According to the undisputed facts, the loaner vehicle clearly falls into that category.[52] As such, it is clear that both policies provided coverage at the time of Ms. Conrad's accident.

**2. The Other–Insurance Clauses**

Since coverage is provided by both policies, the key question the Court faces in determining primacy is how the policies' other-insurance clauses interact. Each policy includes an other-insurance clause that seeks to limit its coverage to excess if any other collectible insurance exists. Allstate claims that Tokio Marine's other-insurance clause is nothing more than an unenforceable escape clause and, therefore, Tokio Marine's policy must be primary. Tokio Marine responds by arguing that even if its other-insurance clause were

49. *See Progressive N. Ins. Co. v. Universal Underwriters Ins. Co.*, 898 A.2d 1116, 1119 (Pa.Super.Ct.2006) ("Admittedly, the MVFRL continues not to include specific language directing that all permissive users of a vehicle be insured under the owner's insurance. However, we find that the changes to § 1786 implicitly direct that such coverage be provided.").

50. *See* Joint Stip. of Fact & Mot. Exs. [Doc. # 20–2] at 48 [Ex. D].

51. *See id.* at 3 & 19 [Ex. A].

52. *See id.* at 1.

an escape clause, which it ardently disputes, Allstate's other-insurance clause would have to be an escape clause as well, since the language used is virtually identical.[53]

### a. Escape Clauses

■ Under Pennsylvania law, "escape clauses" are clauses that purport to "relieve the insurer of *any* obligation to an insured if the insured has other available insurance coverage."[54] For instance, a clause that seeks to wholly remove a person from the policy's definition of an insured[55] or shift all liability to another applicable insurance policy[56] would be an escape clause. There is, however, a distinct difference between an escape clause that seeks to avoid all liability and an excess clause that seeks to limit the insurer's liability to the excess over any other collectible insurance.[57] Unlike an escape clause, an excess clause "affords protection to the insured after exhaustion of the pri-

mary coverage."[58] While escape clauses are viewed with disfavor by courts as they purport to relieve an insurer from any and all obligation to the insured, excess clauses are not similarly disfavored.[59]

■ Here, the question is whether the other-insurance clauses in the Allstate and Tokio Marine policies are unenforceable escape clauses or, conversely, enforceable excess-coverage clauses. Because neither clause seeks to relieve the respective insurers of all liability if there is other collectible insurance, but merely seeks to make its coverage excess in such a case, the other-insurance clauses are not escape clauses.[60] These provisions are classic examples of valid and enforceable excess-coverage clauses, which have been approved under Pennsylvania law.[61]

### b. Mutually Repugnant Excess Clauses

■ Where the other-insurance clauses of two policies each purport to make their

---

**53.** *See* Mem. of Law in Support of Def.'s Mot. for Summ. J. [Doc. # 20–1] at 11.

**54.** *Fryer v. Allstate Ins. Co.*, 392 Pa.Super. 418, 573 A.2d 225, 226 (1990) (emphasis added); *see also Harstead v. Diamond State Ins. Co.*, 555 Pa. 159, 723 A.2d 179, 181 (1999); *Hoffmaster v. Harleysville Ins. Co.*, 441 Pa.Super. 490, 657 A.2d 1274, 1276 (1995).

**55.** *See, e.g., Fryer*, 392 Pa.Super. 418, 573 A.2d 225.

**56.** *See, e.g., Ins. Co. of N. Am. v. Continental Cas. Co.*, 575 F.2d 1070 (3d Cir.1978) (applying Pennsylvania law).

**57.** *See Hoffmaster*, 657 A.2d at 1276 (identifying and discussing the three general categories of "other insurance" clauses as "pro-rata" clauses, escape clauses, and excess clauses).

**58.** *Maryland Cas. Co. v. Horace Mann Ins. Co.*, 551 F.Supp. 907, 909 (W.D.Pa.1982) (applying Pennsylvania law).

**59.** *See Harstead*, 723 A.2d at 182.

**60.** It is in this way that the other-insurance clauses in this case are distinguishable from the clause at issue in the factually similar case cited by Allstate, *Fryer v. Allstate Insurance Co.*, in which the court found that an other-insurance provision was an unenforceable escape clause. 573 A.2d at 227–28. In that case, much like the instant case, the customer of a car dealership was involved in an accident while driving a vehicle loaned to her by the dealership while her personal vehicle was being serviced. *Id.* at 226. The court found that the other-insurance provision at issue in the case relieved the dealership's insurer of any liability to the driver and, thus, it fell within the classic definition of an escape clause. *Id.* at 227–28. In the instant case, the other-insurance clauses dictate that the coverages shall apply as excess if there is other applicable insurance and, thereby, do not relieve the insurers of any and all liability to the insured, Ms. Conrad.

**61.** *See, e.g., Progressive N. Ins. Co.*, 898 A.2d at 1120; *Maryland Cas. Co.*, 551 F.Supp. at 909.

policy's coverage excess over the other, the clauses are irreconcilable and, therefore, mutually repugnant.[62] Mutually repugnant excess-coverage clauses must be disregarded, leaving both policies to apply as primary insurance.[63] Accordingly, such clauses are treated as though they are stricken from the policies, and the insurers share the loss.[64] In Pennsylvania, liability payments are apportioned by equal shares—that is, "each insurer match[es] dollar for dollar payments up to the limits of the lower policy, and ... any remaining portion of the loss [is] paid from the larger policy up to its limits." [65]

In this case, where there are two conflicting excess-coverage, other-insurance clauses, the rule of mutual repugnancy applies to render the clauses ineffective. The other-insurance clauses in both the Allstate and Tokio Marine policy contracts attempt to make the other insurer's coverage primary. As both policies include excess coverage clauses attempting to occupy the same legal status, they are irreconcilable. As a result, the excess-coverage clauses are deemed stricken, and Allstate and Tokio Marine must share the loss by equal shares. This will require the two insurers to match dollar for dollar liability payments up to the limits of the Allstate policy, with any remaining liability to be paid by Tokio Marine up to its one-million-dollar limit.

An appropriate Order follows.

## ORDER

**AND NOW,** this 8th day of December, 2006, upon consideration of Plaintiff's Motion for Summary Judgment and Supporting Memoranda [Docs. ## 19 & 22] and Defendant's Motion for Summary Judgment and Supporting Memoranda [Docs. ## 20, 21, & 23], and after oral argument thereon, it is hereby **ORDERED** that both Motions are **DENIED.**

It is **FURTHER ORDERED** that the parties are to share the loss by equal shares in accordance with the Pennsylvania Supreme Court's decision in *American Casualty Co. of Reading, Pennsylvania v. PHICO Insurance Co.,* 549 Pa. 682, 702 A.2d 1050 (1997). The Court hereby enters this judgment as a matter of law.

The Clerk of Court is hereby **DIRECTED** to **CLOSE** this case.

---

**62.** *Progressive N. Ins. Co.,* 898 A.2d at 1120; *Nationwide Ins. Co. v. Horace Mann Ins. Co.,* 759 A.2d 9, 12 (Pa.Super.Ct.2000).

**63.** *Hoffmaster,* 657 A.2d at 1277; *see also American Cas. Co. of Reading, Pa. v. PHICO Ins. Co.,* 549 Pa. 682, 702 A.2d 1050, 1054 (1997).

**64.** *Progressive N. Ins. Co.,* 898 A.2d at 1120. This approach has been embraced by Pennsylvania courts for obvious reason: giving literal effect to the clauses renders each policy excess to the other and, therefore, neither covers the primary loss, producing an "unintended absurdity." *Hoffmaster,* 657 A.2d at 1277.

**65.** *American Cas. Co.,* 702 A.2d at 1053.