**WENTZVILLE PARK ASSOCIATES, L.P. and Western Heritage Insurance Company, Appellants,**

v.

**AMERICAN CASUALTY INSURANCE COMPANY OF READING, PA, Respondent.**

**No. ED 90412.**

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 2, 2008.

Ted L. Perryman, Jason D. Guerra, Saint Louis, MO, for appellants.

Robert S. Rosenthal, T. Michael Ward, Saint Louis, MO, for respondent.

## OPINION

GLENN A. NORTON, Judge.

Wentzville Park Associates, L.P. ("Associates"), owner of the Wentzville Park Nursing Home (the "nursing home"), and its insurer, Western Heritage Insurance

Company,[1] appeal the grant of summary judgment in favor of American Casualty Insurance Company of Reading, PA on their equitable contribution claim. Western Heritage issued an insurance policy to Associates which provided professional liability coverage to Nurse Naomi Cameron, who worked at the nursing home. In addition, American Casualty issued an insurance policy to Nurse Cameron which provided her with professional liability coverage. Plaintiffs sought contribution from American Casualty after Plaintiffs settled a wrongful death claim involving Nurse Cameron. We affirm.[2]

## I. BACKGROUND

On February 21, 2001, Nurse Cameron supervised a group of Alzheimer's residents at the nursing home, including Mary Brooks. On that same day, Brooks was left unsupervised and fell down a set of unsecured steps. Brooks died as a result of her injuries sustained in the fall. Thereafter, Brooks's family filed a wrongful death action against Associates.

On the date of Brooks's fall, the Western Heritage Policy provided health care facility professional liability coverage to Associates and professional liability coverage to Nurse Cameron. The Western Heritage Policy contained multiple sections, two of which are relevant to this appeal: (1) a section titled "Combined Special Provisions Liability Insurance";[3] and (2) a section titled "Coverage O Health Care Facility Professional Liability Insurance."

The Insuring Agreement portion of Coverage O stated that: (1) "We will pay

those sums that [Associates and Nurse Cameron] become[ ] legally obligated to pay as damages because of injury ... caused by a 'medical incident,'" which was defined to include "any act or omission in the furnishing of professional health care services to any person"; (2) "We will have the right and duty to defend any 'suit' seeking these damages;" and (3) "Our right and duty to defend ends when we have used up the applicable limit of insurance ... under Coverage O." Coverage O had liability limits of $1 million per occurrence and $3 million in the aggregate. A section of Coverage O titled "Health Care Facility Professional Liability Conditions" contained an other insurance clause that provided in relevant part:

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverage O of this Coverage Part, our obligations are limited as follows: ... This insurance is excess over any other insurance other than insurance specifically arranged by you on an umbrella or similar basis to apply as excess of this Coverage Form.

In addition to being provided professional liability coverage by the Western Heritage Policy on the date of Brooks's fall, Nurse Cameron was also provided with professional liability coverage by the American Casualty Policy. The Coverage Agreement portion of the American Casualty Policy stated in relevant part:

> We will pay all amounts up to the limit of liability which you become legally obligated to pay as a result of injury or damage. In addition to the limit of liability, we will also pay claim expenses. The injury or damage must be caused

---

1. For purposes of appeal, Associates, the nursing home, and Western Heritage will be collectively referred to as "Plaintiffs."

2. We grant Plaintiffs' "Motion For Leave To File Supplement To Legal File With Consent

of [American Casualty's] Counsel," which was taken with the case.

3. The relevant provision in this section will be discussed below in Section C.

by a medical incident arising out of the supplying of, or failure to supply, professional services by you, or by anyone for whose professional acts you are legally responsible.

"Medical Incident" was defined as "any act, error or omission in [Nurse Cameron's] providing or failure to provide professional services ... includ[ing her] responsibility for anyone acting under [her] direction or control." The American Casualty Policy had liability limits of $500,000 per occurrence and $2.5 million in the aggregate. The American Casualty Policy contained an other insurance clause that stated in relevant part:

> Any loss resulting from any claim insured under any other insurance policy or risk transfer instrument ... which applies to this loss, shall be paid first by those instruments, policies or other arrangements. This insurance will not serve as primary insurance where there is other applicable insurance. It is the intent of this policy to apply only to loss which is more than the total limit of all deductibles, limits of liability, self-insured amounts or other valid and collectible insurance or risk transfer arrangements, whether primary, contributory, excess, contingent, or otherwise. This insurance will not contribute with any other applicable insurance....

Western Heritage settled Brooks's family's wrongful death claim in the amount of $405,000. The settlement extinguished the liability of Associates and of its employees, including Nurse Cameron, for damages arising from the loss. American Casualty did not contribute to the settlement.

Plaintiffs subsequently filed an action for equitable contribution against American Casualty, alleging that their settlement of the wrongful death claim extinguished American Casualty's liability for the loss. After both parties filed motions for summary judgment, the trial court granted summary judgment in favor of American Casualty on Plaintiffs' equitable contribution claim. The trial found that American Casualty was not liable for the loss due to the language in the policy's other insurance clause. Plaintiffs appeal.

## II. DISCUSSION

### A. Standard of Review

Our review of summary judgment is essentially *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Summary judgment is frequently used in the context of insurance coverage questions, and the interpretation of an insurance policy is a question of law." *Stark Liquidation Co. v. Florists' Mutual Insurance Co.*, 243 S.W.3d 385, 391 (Mo.App. E.D.2007) (internal quotation omitted). Although we view the record and construe all inferences favorably to Plaintiffs, the non-movants, facts set forth in support of American Casualty's summary judgment motion are taken as true unless contradicted by Plaintiffs' response. *See ITT*, 854 S.W.2d at 376. We will affirm the grant of summary judgment only where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* Moreover, we must affirm the trial court's judgment if it is sustainable under any theory. *Stark*, 243 S.W.3d at 392.

### B. Western Heritage is not Entitled to Equitable Contribution from American Casualty Because Only Western Heritage is Liable for the Loss

In their first point on appeal, Plaintiffs contend that the trial court erred in granting summary judgment in favor of American Casualty on their equitable contribution claim because both insurance

companies are liable for the loss under the doctrine of mutual repugnancy and because Western Heritage has paid more than its share of the loss. We disagree.

### 1. Applicable Insurance Law

"Equitable contribution is the right to recover from a co-obligor who shares liability with the party seeking contribution." *Heartland Payment Systems, L.L.C. v. Utica Mutual Insurance Co.,* 185 S.W.3d 225, 232 (Mo.App. E.D.2006). The right to contribution arises when more than one insurer is liable for the same loss and when one insurer has paid more than its share of the loss. *Id.*

Other insurance and concurrent coverage exists where there are two or more insurance policies covering the same interest and against the same risk. *Nationwide Insurance Co. v. Horace Mann Insurance Co.,* 759 A.2d 9, 11 (Pa.Super.2000); *Federal Insurance Co. v. Empire Mutual Insurance Co.,* 181 A.D.2d 568, 569, 581 N.Y.S.2d 56 (N.Y.App.Div. 1992). Other insurance clauses function to vary, reduce, or eliminate the insurer's liability in the event of concurrent coverage. *Distler v. Reuther Jeep Eagle,* 14 S.W.3d 179, 183 (Mo.App. E.D.2000). There are three general types of other insurance clauses. *Id.* The first, a "pro rata" clause, provides that the insurer will pay its pro rata share of the loss, usually in the proportion that the limit of its policy bears to the total of the limits of all valid and collectible insurance. *Id.* The second, an "excess" clause, provides that an insurer's liability shall be only the amount by which the loss exceeds the coverage of all other valid and collectible insurance, up to the limit of the policy. *Id.* Finally, an "escape" or "no liability" clause provides that the insurer is not liable for a loss that is covered by other valid and collectible insurance. *Id.; State Farm Mutual Auto. Insurance Co. v. Western Casualty &* *Surety Co.,* 477 S.W.2d 421, 427 (Mo. banc 1972). All three types of other insurance clauses are valid in the absence of a statute or public policy to the contrary. *Distler,* 14 S.W.3d at 183.

Where two insurance policies providing concurrent coverage both contain other insurance clauses, it is necessary to analyze each other insurance clause to determine whether one or both insurers is liable for an insured loss. *Schoenecker v. Haines,* 88 Wis.2d 665, 277 N.W.2d 782, 784 (1979). " '[O]ther insurance' clauses cannot be permitted to operate to produce a total forfeiture of coverage." *Id.* at 785. Accordingly, if an insured would be left without coverage if full effect is given to both policies' other insurance clauses, courts apply what is referred to as the "doctrine of mutual repugnancy." *Smith v. Wausau Underwriters Insurance Co.,* 977 S.W.2d 291, 294 (Mo.App. W.D.1998). Under that doctrine, courts disregard similar clauses as being mutually repugnant and order the insurers to share the loss on a pro rata basis. *Id.; See, e.g., Arditi v. Massachusetts Bonding & Insurance Co.,* 315 S.W.2d 736, 742–43 (Mo.1958) (holding that two similar excess clauses were disregarded as being mutually repugnant and ordering the insurers to share the loss on a pro rata basis).

However, the doctrine of mutual repugnancy is not absolute. *Smith,* 977 S.W.2d at 294 n. 6. Two other insurance clauses are not repugnant if both clauses can be given their full effect and the insured has coverage. *Schoenecker,* 277 N.W.2d at 785–86. For example, in *State Farm,* the Missouri Supreme Court declined to apply the doctrine of mutual repugnancy to two primary insurance policies' other insurance clauses where one policy contained a "no liability" clause and

the other policy contained an "excess clause." 477 S.W.2d at 426–27; *Smith,* 977 S.W.2d at 294 n. 6; *Planet Insurance Co. v. Ertz,* 920 S.W.2d 591, 595 (Mo.App. W.D.1996). As discussed below, we find that *State Farm* is directly on point.

**2. American Casualty is Absolved from Liability Pursuant to *State Farm***

Other insurance and concurrent coverage exists in this case because the Western Heritage Policy and the American Casualty policy both provided professional liability insurance coverage to Nurse Cameron for injuries caused by a medical incident relating to any act or omission in the furnishing of professional services. Because both policies contain other insurance clauses, it is necessary to analyze each other insurance clause to determine whether one or both insurers are liable for the loss. Controlling in this analysis is *State Farm,* 477 S.W.2d 421.

*State Farm* involved an appeal from a judgment declaring that: (1) a primary insurance policy issued on a 1964 station wagon owned by Ira Sphra provided coverage under its "non-owned automobile" clause on a 1967 Chevrolet driven by Ira's son; and (2) no coverage was provided for Ira's son under a primary insurance policy issued to the owner of the 1967 Chevrolet. 477 S.W.2d at 422; *Planet Insurance,* 920 S.W.2d at 595. The Missouri Supreme Court determined the applicability of the two primary insurance policies covering the same loss when both policies contained other insurance clauses. *State Farm,* 477 S.W.2d at 426–27. One policy's other insurance clause provided that no damages were collectable under the policy "[i]f there is other valid and collectible insurance, whether primary, excess or contingent, ... and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit." *Id.* at 426. The Court

found that this other insurance clause was a "no liability" clause because it "expressly provides that its insurance does not apply to any loss covered by 'other valid and collectible insurance, whether primary, excess or contingent.'" *Id.* at 426–27. The other policy's other insurance clause provided that non-owned automobile coverage "shall be excess over other collectible insurance." *Id.* at 426. The Court found that this other insurance clause was an "excess" clause. *Id.* The Supreme Court held that the "no liability" clause prevailed over the "excess" clause because the language in the "no liability" clause anticipated the possibility of the existence of an "excess" clause in another policy and expressly contracted against liability in that situation. *Id.* at 427.

**a. The Western Heritage Policy's Other Insurance Clause is an "Excess" Clause and the American Casualty Policy's Other Insurance Clause is a "No Liability" Clause**

 Western Heritage Policy's "Coverage O Health Care Facility Professional Liability Insurance" section contained an other insurance clause that provided the following:

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverage O of this Coverage Part, our obligations are limited as follows: ... *This insurance is excess over any other insurance* other than insurance specifically arranged by you on an umbrella or similar basis to apply as excess of this Coverage Form. (emphasis added).

We find that this is an "excess" clause because it is similar to other insurance language the State Farm Court found to be an excess clause. *See* 477 S.W.2d at 426.

The American Casualty Policy other insurance clause states in relevant part that:

Any loss resulting from any claim insured under any other insurance policy or risk transfer instrument ... which applies to this loss, shall be paid first by those instruments, policies or other arrangements. This insurance will not serve as primary insurance where there is other applicable insurance. It is the intent of this policy to *apply only to loss which is more than the total limit of all deductibles, limits of liability, self-insured amounts or other valid and collectible insurance or risk transfer arrangements, whether primary, contributory, excess, contingent, or otherwise.* This insurance will not contribute with any other applicable insurance .... (emphasis added)

We find that this is a "no liability" clause because it is similar to other insurance language the State Farm Court found to be a "no liability" clause. *See id.* at 426–27.

### b. The Western Heritage Policy and the American Casualty Policy are Both Primary Policies

Having found that the Western Heritage Policy's other insurance clause is an "excess" clause and the American Casualty Policy's other insurance clause is a "no liability" clause, the *State Farm* Court's refusal to apply the doctrine of mutual repugnancy only applies to this case if both of those insurance policies are primary policies. *See Planet Insurance,* 920 S.W.2d at 595–96 (distinguishing and declining to apply *State Farm* in part because the insurance policies involved in *Planet Insurance* were excess policies and not primary policies like those in *State*

*Farm* ). Thus, we must determine whether the Western Heritage Policy and the American Casualty Policy are primary policies.

An insurance policy can be either a primary policy or an excess policy.[4] *See Planet Insurance,* 920 S.W.2d at 593 (stating that there is primary insurance and excess insurance); *Irvin v. Rhodes,* 929 S.W.2d 829, 834 n. 6 (Mo.App. W.D. 1996) (stating that the two insurance policies in that case were both primary policies as opposed to excess insurance policies). Language contained in a policy's other insurance clause does not transform a policy into an excess policy. *Smith,* 977 S.W.2d at 293.

No language other than that contained in the "excess" clause of the Western Heritage Policy states that its professional liability coverage was to be in excess of any other insurance. To the contrary, the following language in the Insuring Agreement of Coverage O signifies that the Western Heritage Policy is a primary policy with respect to professional liability insurance: (1) "We will pay those sums that [Associates and Nurse Cameron] become[ ] legally obligated to pay as damages because of injury ... caused by a 'medical incident,'" which was defined to include "any act of omission in the furnishing of professional health care services to any person"; (2) "We will have the right and duty to defend any 'suit' seeking these damages;" and (3) "Our right and duty to defend ends when we have used up the applicable limit of insurance ... under Coverage O." Thus, we find that the Western Heritage Policy is a primary policy. *See Smith,* 977 S.W.2d at 293–94 (finding that an insurance policy was a primary policy where no language other than that contained in the "excess" clause stated

---

4. There are two different types of excess insurance policies: "true excess" and "umbrella." *Planet Insurance,* 920 S.W.2d at 593.

Additionally, each type may take one of two forms: "following form" or "stand alone." *Id.*

coverage was to be in excess of any other insurance and where other language in the policy signified it was a primary policy).

As to the American Casualty Policy, its "no liability" clause states in relevant part that: "This insurance will not serve as primary insurance where there is other applicable insurance." However, as noted above, language contained in a policy's other insurance clause does not transform a policy into an excess policy. Additionally, no other language indicates that the American Casualty Policy was not a primary policy. In fact, the following language contained in the Coverage Agreement portion of the American Casualty Policy signifies that it is a primary policy:

> We will pay all amounts up to the limit of liability which you become legally obligated to pay as a result of injury or damage. In addition to the limit of liability, we will also pay claim expenses. The injury or damage must be caused by a medical incident arising out of the supplying of, or failure to supply, professional services by you, or by anyone for whose professional acts you are legally responsible.

Accordingly, we find that the American Casualty Policy is also a primary policy.[5] See id.

### c. Conclusion

*State Farm* is directly on point. Like the insurance policies' other insurance clauses in *State Farm*, one insurance policy contains a "no liability" clause (the American Casualty Policy) and one policy contains an "excess" clause (the Western Heritage Policy). Moreover, like the two insurance policies in *State Farm*, the American Casualty Policy and the Western Heritage Policy are both primary policies.

Thus, the following language from *State Farm* is controlling:

> Where a 'no liability' clause expressly provides that its insurance does not apply to any loss covered by 'other valid and collectible insurance, whether primary, excess or contingent,' numerous authorities have held that the insurance company whose policy contains such clause will be absolved from liability in a case where the other policy contains what is designated as an 'excess' clause. The rationale for such holding is that the insurer whose policy contains a specific 'no liability' clause anticipated the possibility of the existence of an 'excess' clause in [another policy] and expressly contracted against liability in that situation.

477 S.W.2d at 427. Applying this reasoning, the language of the "no liability" clause in the American Casualty Policy should be given effect over the "excess" clause in the Western Heritage Policy. *See Irvin*, 929 S.W.2d at 833–34 (applying the reasoning of *State Farm* in a similar fashion). Accordingly, American Casualty is not liable for the loss. *Id.* Because only Western Heritage is liable for the loss, Plaintiffs are not entitled to equitable contribution from American Casualty. Therefore, the trial court did not err in entering summary judgment in favor of American Casualty on Plaintiffs' equitable contribution claim. Point one is denied.

### C. The Trial Court Did Not Err in Failing to Consider an Other Insurance Clause Found in the Combined Special Provisions Liability Insurance Section of the Western Heritage Policy

In their third and final point on appeal, Plaintiffs argue that the trial court

---

**5.** Plaintiffs' argument in their second point on appeal relies on their contention that the American Casualty Policy is a primary policy and that the Western Heritage policy is an excess policy. Because we find that that both the American Casualty Policy and the Western Heritage Policy are both primary policies, Plaintiffs second point is denied.

erred in failing to consider an other insurance clause found in the "Combined Special Provisions Liability Insurance" section of the Western Heritage Policy. We disagree.

Plaintiffs' argument fails under the rules of construction. If the trial court gave the other insurance clause found in "Combined Special Provisions Liability Insurance" section meaning, the other insurance clause in Coverage O would not have any effect. This result would be contrary to the rules of construction which require a court to avoid construing a contract in a way which renders other terms and provisions meaningless. *Transit Casualty Co. in Receivership v. Certain Underwriters at Lloyd's of London*, 963 S.W.2d 392, 397 (Mo.App. W.D.1998). Point three is denied.

### III. CONCLUSION

The judgment is affirmed.

ROY L. RICHTER, P.J., and CLIFFORD H. AHRENS, J., concur.